**[EXPEDITED ORAL ARGUMENT REQUESTED]**

**Nos. 25-2102 & 25-2103**

---

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**------------------------------------**

TOBIN DOLAN and MARIANNA LANDS, et al.,

Plaintiffs-Appellees,

v.

FEDERAL EMERGENCY MANAGEMENT AGENCY, et al.,

Defendants-Appellants.

---

Consolidated Appeals for the United States District Court
for the District of New Mexico
District Court Case Nos. 23-cv-869 & 23-cv-908
(Hon. James O. Browning)

---

**BRIEF FOR APPELLEES**

---

MARK C. DOW
MAUREEN S. MOORE
*Attorneys for Appellees*
*Marianna Lands and*
*Charles Paynter*
P.O. Box 30684
Albuquerque, NM 87190
(505) 883-3191

THOMAS TOSDAL
*Attorney for Appellees*
*Marianna Lands and Charles*
*Paynter*
P.O. Box 109
Ovando, MT 59854
(858) 877-0223

# TABLE OF CONTENTS

**Page**


Table of Authorities ........................................................... v

Statement of Related Appeals ........................................................... xiii

Glossary ........................................................... xiv

INTRODUCTION ........................................................... 1

1. The Hermit's Peak Calf Canyon Fire ........................................ 3
2. Congressional Findings ........................................ 4
3. The Purposes of the Act ........................................ 5
4. FEMA's Preclusion of Noneconomic Damages ........................................ 5
5. The Claims of Marianna Lands and Charles Paynter ........................................ 6
6. Jurisdiction, Venue, and Standing ........................................ 6

ARGUMENT

I. THE HERMIT'S PEAK/CALF CANYON ACT UNAMBIGUOUSLY PROVIDES FOR RECOVERY OF NONECONOMIC DAMAGES UNDER NEW MEXICO LAW ........................................ 7

A. STANDARD OF REVIEW ........................................ 7

B. THE PLAIN AND UNAMBIGUOUS MEANING OF THE ACT REQUIRES FEMA TO AWARD NONECONOMIC DAMAGES AS PROVIDED BY NEW MEXICO LAW ........................................ 9

(1.) Act §102(b)(1): The Act's Purpose To "Compensate" Victims For "Injuries" Resulting From the Fire ........................................ 10

**Page**

(2.) Act §103(5): Defining "Injury" To Be the Same As Used in the FTCA ....................................................10

(3.) Act §104(a)(1): FEMA Shall Pay Compensation For Injuries Caused by the Fire......................................12

(4.) Act §104(c)(3): The Extent of Damages Is Actual Compensatory Damages Measured By The Injuries Suffered ..........................................................................14

(5.) Act § 104(c)(2): Applicability of New Mexico Law.......16

(6.) Act § 104(d)(4) – "Allowable Damages" – Is Supplemental, Not Exclusive ........................................21

C. THE DISTRICT COURT CORRECTLY FOUND FEMA'S INTERPRETATION OF THE HERMIT'S PEAK ACT TO BE INCONSISTENT WITH ITS INTERPRETATION OF THE CERRO GRANDE FIRE ASSISTANCE ACT ............................................26

II. THE HERMIT'S PEAK ACT UNMISTAKABLY WAIVES THE SOVEREIGN IMMUNITY OF THE UNITED STATES FOR RECOVERY OF NONECONOMIC DAMAGES UNDER NEW MEXICO LAW ........................................................27

III. THE HERMIT'S PEAK ACT MANDATES NEW MEXICO LAW "SHALL APPLY" ....................................................32

A. BECAUSE THE ACT ACCEPTS LIABILITY FOR TORT DAMAGES UNDER NEW MEXICO LAW, THE COURT NEED NOT MAKE A FACTUAL DETERMINATION OF TORT LIABILITY .....................32

**Page**

B. THE COURT MAY PREDICT THE NEW MEXICO TORTS OF NEGLIGENCE, TRESPASS, PRIVATE NUISANCE AND STRICT LIABILITY ALLOW FOR NONECONOMIC DAMAGES........................................33

(1.) Federal Courts Regularly Predict State Law Under The FTCA..........................................................33

(2.) The Court's Reliance on Congress' Findings and Purposes............................................................34

(3.) The Court May Rely on the Administrative Record..............................................................36

(4.) The Court's Reliance on the '90-Day Review' Is Not Subsequent Remedial Evidence................................39

(5.) Negligence, Nuisance and Trespass Causes of Action Provide Relief for Noneconomic Damages........................53

(6.) New Mexico Strict Liability for Inherently Dangerous Activities Provides Relief for Noneconomic Damages................................................61

(7.) The NM Prescribed Burn Act Does Not Immunize FEMA From New Mexico Common Law Tort Liability........................................................65

IV. BECAUSE THE DISTRICT COURT COMPELS FEMA TO AWARD NONECONOMIC DAMAGES ONLY WHERE APPROPRIATE, THERE IS NO NEED TO REMAND TO FEMA FOR FURTHER DETERMINATION...........................69

CONCLUSION..........................................................................69

REQUEST FOR ORAL ARGUMENT ..........................................71

**Page**

CERTIFICATE OF COMPLIANCE ..............................................72

CERTIFICATE OF DIGITAL SUBMISSION ..................................73

CERTIFICATE OF SERVICE ....................................................74

## TABLE OF AUTHORITIES

### CASES

**Page**

*Aguayo v. Village of Chama*,
1969-NMSC-005, 79 N.M. 729, 449 P.2d 331..........54,55,58,59,60

*Baldonado v. El Paso Natural Gas Co.*,
2008-NMSC-005, 143 N.M. 288, 176 P.3d 277..........................59

*Bostock v. Clayton County, Georgia*,
590 U.S. 644 (2020)........................................................7,15

*Calvaresi v. National Development Co.*,
772 P.2d 640 (Colo. App. 1988)..............................................57

*Castillo v. City of Las Vegas*,
2008-NMCA-141, 145 N.M. 205, 195 P.3d 870....................... 58,59

*Central Security & Alarm Co. v. Mehler*,
1996-NMCA-060, 121 N.M. 840, 918 P.2d 1340 .................... 15

*Citizens for Alternatives to Radioactive Dumping v. U.S. Dep't of Energy*,
485 F.3d 1091 (10th Cir. 2007)............................................. 47

*Clay v. Ferrellgas, Inc.*,
1994-NMSC-080, 118 N.M. 266, 881 P.2d 11 ...................... 54

*Contreras-Bocanegra v. Holder*,
678 F.3d 811 (10th Cir. 2012)............................................. 16

*Daley v. Ceja*,
158 F.4th 1152 (10th Cir. 2025)....................................28,29,30

*Dekovic v. Rubio*,
169 F.4th 1002 (10th Cir. 2026)......................................... 8, 29

**Page**

*Department of Agriculture Rural Development Rural Housing Service v. Kirtz,*
601 U.S. 42 (2024)........................................................... 27,29

*Department of Commerce v. New York*
586 U.S. 752 (2019) ...........................................................41

*Dow Chemical Corp. v. Weevil-Cide Co.,*
897 F.2d 481 (10th Cir. 1990)..................................................50

*Erie R.R. Co. v. Tompkins,*
304 U.S. 64 (1938)..............................................................32

*Federal Aviation Administration v. Cooper,*
566 U.S. 284 (2012).........................................................29,31,32

*Fernandez v. Walgreen Hastings Co.,*
1998-NMSC-039, 126 N.M. 263, 968 P.2d 774..............................59

*Florida Power & Light Co. v. Lorion,*
470 U.S. 729 (1985)............................................................36

*Forest Guardians v. Babbitt,*
174 F.3d 1178 (10th Cir. 1999).............................................12

*Herrera v. Quality Pontiac,*
2003-NMSC-018, 134 N.M. 43, 73 P.3d 181......................... 35,54

*Hoskie v. United States,*
666 F.2d 1353 (10th Cir. 1981)......................................... ....53

*In re Gold King Mine Release in San Juan County, Colorado, On August 5,2015,*
2022 WL 3279341 (D.N.M. Aug. 11, 2022)..........................56,57

**Page**

*John Zink Co. v. Zink*,
241 F.3d 1256 (10th Cir. 2001)....47

*Kimel v. Florida Bd. of Regents*,
528 U.S. 62 (2000)....30

*Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*,
599 U.S. 382 (2023).... 28,29

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024)....1, 2, 26, 28

*Mehojah v. Drummond*,
56 F.3d 1213 (10th Cir. 1995)....51,52

*Molzof v. United States*,
502 U.S. 301 (1992).... 11

*Nielsen v. Preap*,
586 U.S. 392 (2019)....25

*Olenhouse v. Commodity Credit Corp.*,
42 F.3d 1560 (10th Cir. 1994)....36

*Padilla v. Lawrence*,
1984-NMCA-064, 101 N.M. 556, 685 P.2d 964....55,56,58,60

*Potts v. Center for Excellence in Higher Education*,
908 F.3d 610 (10th Cir. 2018)....7,8

*Racher v. Westlake Nursing Home Ltd. P'ship*
871 F.3d 1152 (10th Cir. 2017)....34

*Richison v. Ernest Group, Inc.*
634 F.3d 1123 (10th Cir. 2011)....9

**Page**

*Rocky Mountain Helicopters, Inc. v. Bell Helicopters Textron, a Div. of Textron, Inc.*,
805 F.2d 907 (10th Cir. 1986)....................................................50,51

*Rodgers v. City of Loving*,
1997-NMCA-132, 91 N.M. 306, 573 P.2d 240..........................63,64

*Romero v. Byers*,
1994-NMSC-031, 117 N.M. 422, 872 P.2d 840........................... 53

*Saiz v. Belen School District*,
1992-NMSC-018, 113 N.M. 387, 827 P.2d 102...................61,62,63

*Sanchez v. Clayton*
1994-NMSC-064, 117 N.M. 761, 877 P.2d 567............................15

*Schwartzman, Inc. v. Atchison, Topeka & Santa Fe Ry. Co.*,
842 F. Supp. 475 (D.N.M. 1993)..................................61,62, 63, 64

*Sena v. New Mexico State Police*,
1995-NMCA-003, 119 N.M. 471, 892 P.2d 604...........................53

*Sheraden v. Black*,
1988-NMCA-016, 107 N.M. 76, 752 P.2d 791.............................53

*Thomas v. Arn*,
474 U.S. 140 (1985).........................................................44,45,46

*Thigpen v. Skousen & Hise*,
1958-NMSC-084, 64 N.M. 290, 327 P.2d 802..............................65

*United States v. Brunton*,
218 Fed. Appx. 816, 2007 WL 61468 (10th Cir. 2007)..................45

*United States v. DeBerry*,
430 F.3d 1294 (10th Cir. 2005).............................................. ....48

**Page**

*United States v. DeLeon*,
287 F. Supp. 3d 1187 (D.N.M. 2018)......................................43

*United States v. Marin*,
2026 WL 83760 (10th Cir. Jan. 12, 2026..................................45

*United States v. One Parcel of Real Property, with Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*
73 F.3d 1057 (10th Cir. 1996)..........................................44,45

*United States v. Sosa*,
2016 WL 9776569 (D.N.M. December 29, 2016)........................45

*United States v. Teerlink*,
141 F.4th 1126 (10th Cir. 2025)........................................48,49

*United States v. Yellow Cab Co.*,
340 U.S. 543 (1951))............................................................31

*Wankier v. Crown Equipment Corp.*,
353 F.3d 862 (10th Cir. 2003)...........................................34

*Williams v. Stewart*
2005-NMCA-061, 137 N.M. 420, 112 P.3d 281.........................59

**STATUTES**

Administrative Procedure Act:
5 U.S.C. § 706(1) ........................................................69,70
5 U.S.C. § 706(2) ........................................................41,69

Cerro Grande Fire Assistance Act,
Pub. L. No. 106-246, 114 Stat. 511 (2000)......................... 26, 27

**Page**

Federal Tort Claims Act,
28 U.S.C. § 1346(b)........................................................11
28 U.S.C. § 2674.........................................................11,16, 30

Hermits Peak Calf Canyon Fire Assistance Act, Public Law 117-180,
136 Stat. 2168 (Sept. 30, 2022)
§ 102(a) ..............................................................34,35,52
§ 102(a)(1) ..............................................................4
§ 102(a)(2) ..............................................................4,34
§ 102(a)(3) ..............................................................4,34
§ 102(a)(4) ..............................................................4
§ 102(a)(5) ..............................................................5
§ 102(a)(6) ..............................................................5
§ 102(a)(7) ..............................................................35
§ 102(a)(8) ..............................................................5, 32,37
§ 102(a)(9) ..............................................................5
§ 102(a)(10) ..............................................................5
§ 102(b) ..............................................................5
§ 102(b)(1) ..............................................................9,10, 30
§ 102(b)(2) ..............................................................25
§ 103(4) ..............................................................25
§ 103(5)..........................................9,10,23,24,25,27, 30, 33
§ 104(a)(1) ..........................................9,12,13,18, 24, 25, 27
§ 104(c)(2) ..........................................9, 16, 17, 32, 33,34
§ 104(c)(3)..........................................9,10,14, 25, 30, 34
§ 104(d)(1)(B)..............................................................13,25
§ 102(d)(1)(C)..............................................................23,25
§ 104(d)(4)..................8,10, 12, 13,16,17, 18, 21, 22, 23, 24, 26, 27
§ 104(d)(4)(A)..............................................................17,22
§ 104(d)(4)(C)(vii)..............................................................17
§ 104(d)(4)(C)(ix)..............................................................18
§ 104(f)(1) ..............................................................36,39

Stafford Act,
42 U.S.C. § 5121 et seq..............................................................23

N.M. Stat. Ann. §§ 68-5-1 et seq. (Prescribed Burn Act)......65, 66, 67, 68

**Page**

**FEDERAL RULES**

Fed. R. Civ. P. 59..........................................................................41

Fed. R. Civ. P. 72(b)........................................................................44

Fed. R. Evid. 407...................................40, 41, 44, 49, 50, 51, 52

Fed. R. Evid. 801(d)(2)(A)..............................................................43

**FEDERAL REGULATIONS**

88 Fed. Reg. No. 166 p. 59730 (2023)..........................................5,6

88 Fed. Reg. No. 166 p. 59743-4 (2023) ..........................................6

**NEW MEXICO RULES**

NMRA 13-1807.......................................................................15,20,54
NMRA 13-1807A.....................................................................15,20,54
NMRA 13-1812...............................................................................19
NMRA 13-1814...............................................................................19
NMRA 13-1815...............................................................................19
NMRA 13-1817...............................................................................20
NMRA 13-1819...............................................................................17
NMRA 13-1827...............................................................................35

**OTHER SOURCES**

Black's Law Dictionary (12th ed.)..................................10, 12, 15, 22

Merriam-Webster Dictionary...........................................................16, 19

**Page**

Restatement (Second) of Torts §§ 157–166,............................57, 58, 61

Restatement (Second) of Torts §§ 519–520.......................................63

Restatement (Second Torts, §929(1)..................................................59

Restatement (Third) of Torts: Liability for Physical &
Emotional Harm § 20.........................................................63, 64-65

Frumer, Louis R. & Melvin I. Friedman, *Personal Injury: Actions, Defenses, Damages* § 138.05 (2024)....................................61

Patrick Lohmann, Were You Affected by the Massive Wildfire in Northern New Mexico? (Mar. 2, 2023), https://www.propublica.org/getinvolved/new-mexico-wildfires-hermits-peak-calf-canyon
(last accessed December 6, 2024).....................................................3

Pietsch, Bryan and Jason Samenow, New Mexico blaze is now largest wildfire in state history, The Washington Post (May 17, 2022), https: www.washingtonpost.com/nation/ 2022/05/17/ calf-canyonhermits-peak-fire-new-mexico/
(last accessed December 5, 2024).....................................................3

## STATEMENT OF RELATED APPEALS

## PURSUANT TO CIRCUIT RULE 28.2(C)(3)

Counsel for Appellees is aware of the following related appeal: *Gallegos v. FEMA,* No. 25-2107 (10th Cir.). That appeal has been abated pending the district court's disposition of a post-judgment motion.

## GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| Cerro Grande Act | Cerro Grande Fire Assistance Act of 2001, Public Law 106-246, 114 Stat. 584 (2001) |
| FEMA | Federal Emergency Management Agency |
| Fire | Hermit's Peak/Calf Canyon Fire |
| FTCA | Federal Tort Claims Act |
| Hermit's Peak Act or Act | Hermit's Peak/Calf Canyon Fire Assistance Act, Public Law 117-180, 136 Stat. 2168 (Sept. 30, 2022) |
| MOO 12/17/24 | Memorandum Opinion and Order entered on December 17, 2024 |
| MOO 7/18/25 | Memorandum Opinion and Order entered on July 18, 2025 |
| NMUJI | New Mexico Jury Instructions |

## INTRODUCTION

By this appeal, FEMA seeks to overturn a detailed and exhaustive decision by the District Court of New Mexico affecting thousands of residents and property owners in northern New Mexico who suffered serious harm from two wildfires recklessly caused by the United States Forest Service ("Forest Service"). Congress sought to do right by the victims of the fires by enacting and funding the Hermit's Peak/Calf Canyon Fire Assistance Act. (Public Law 117-180, 136 Stat. 2168 (Sept. 30, 2022).) (The "Act.") But FEMA perverted Congressional intent by promulgating an agency rule precluding the recovery of noneconomic damages, which Congress clearly and unmistakably intended be recovered by factually qualified claimants.

FEMA's Brief for Appellants is deeply flawed. FEMA ignores the directive of the Supreme Court that the District and this Court's task is to discern the single best meaning of a statute using the full interpretive toolkit available to it. *Loper Bright v. Raimundo*, 603 U.S. 369, 408-9 (2024). Rather, FEMA seeks to eke out an ambiguity in the statutory language where there is none, in the vain hope of finding a

sovereign immunity offramp. Brief for Appellants, Appellate ECF 43, page 2.

FEMA fails to read the Act as a whole, choosing instead to cherry pick a few selected subsections to the exclusion of others. FEMA interprets statutory language in a manner that does violence to its plain meaning. FEMA's interpretation impermissibly makes surplusage of important parts of the Act. And FEMA incorrectly relies on its own tacit exceptions - "donut holes" - to make its case.

Read as a whole, using the full interpretive toolkit as *Loper Bright* commands, the clearly discernible and unambiguous meaning of the Act is Congress intended to provide for recovery from the United States of noneconomic damages by victims of the Hermit's Peak/Calf Canyon Fire as provided by New Mexico law. The Act's waiver of sovereign immunity for claims for noneconomic damages under New Mexico law is unmistakable.

Because the Act accepts liability for the Forest Service allowing the Hermit's Peak Calf Canyon wildfire to escape containment, the Act compels the Court to survey applicable New Mexico tort law to assess causes of action to calculate damages for noneconomic damages. The

District Court correctly relied on Congress' findings of fact and the administrative record to predict that New Mexico State law causes of action nuisance, trespass, negligence and strict liability provide relief for noneconomic damages.

The District Court did not commit reversible error. The judgment must be affirmed.

## 1. THE HERMIT'S PEAK/CALF CANYON FIRE

In April 2022, a wildfire scorched over 340,000 acres of land in northeastern New Mexico, destroying over 900 structures, and forcing the evacuation of over 15,000 households throughout Mora, San Miguel and Taos Counties.[1] The fire was the largest wildfire in New Mexico State history.[2]

---

[1] See Patrick Lohmann, Were You Affected by the Massive Wildfire in Northern New Mexico? (Mar. 2, 2023), https://www.propublica.org/getinvolved/new-mexico-wildfires-hermits-peak-calf-canyon.

[2] See Bryan Pietsch and Jason Samenow, New Mexico blaze is now largest wildfire in state history, The Washington Post (May 17, 2022), https:(ww.washingtonpost.com/nation/2022 /05/17/ calf-canyonhermits-peak-fire-new-mexico/.

## 2. CONGRESSIONAL FINDINGS

The Act states Congress' findings clearly and unequivocally:

On April 6, 2022, the Forest Service initiated a prescribed burn on federal land "when erratic winds were prevalent in the area that was also suffering from severe drought after many years of insufficient precipitation." Act §102(a)(1).[3] On that same day, the prescribed burn, which became known as the Hermit's Peak Fire, exceeded the containment capabilities of the Forest Service, was declared a wildfire, and spread to other federal, state, and private land. §102(a)(2).

On April 19, 2022, the Calf Canyon Fire began burning on federal land and was later identified as the result of a pile burn in January 2022 that remained dormant under the surface before reemerging. §102(a)(3).

On April 27, 2022, the two fires merged and were reported as the Hermit's Peak Fire or the Hermit's Peak/Calf Canyon Fire, this latter term being the one Congress uses in the Act. §102(a)(4).

---

[3] All citations are to the Hermit's Peak Act (herein "Act" or "§") unless stated otherwise.

By May 2, 2022, the fire had grown in size and caused evacuations in San Miguel and Mora counties. §102(a)(5).

On May 4, 2022, the President issued a major disaster declaration for three New Mexico counties. §102(a)(6).

The Forest Service has assumed responsibility for the fire. § 102(a)(8).

The fire resulted in the loss of federal, state, local, and private property. §102(a)(9).

Finally, Congress found "the United States should compensate the victims of the Hermit's Peak/Calf Canyon Fire." §102(a)(10).

### 3. THE PURPOSES OF THE ACT

The Act states two purposes:

(1) To compensate victims of the Hermit's Peak/Calf Canyon Fire, for injuries resulting from the fire; and

(2) to provide for the expeditious consideration and settlement of claims for those injuries.

Act §102(b).

### 4. FEMA'S PRECLUSION OF NONECONOMIC DAMAGES

On August 29, 2023, FEMA published final rules and regulations for processing claims for compensation under the Act. 88 Fed. Reg. No.

166 p. 59730 *et seq*. FEMA's response to comments in the final rules and regulations preclude the recovery of noneconomic damages. *Id.* at 59743-4.

**5. THE CLAIMS OF MARIANNA LANDS AND CHARLES PAYNTER**

On July 16, 2023, Charles Paynter filed a Notice of Loss with FEMA alleging harm to him, including evacuation, loss of electricity, water supply and stored food, and noneconomic harm of annoyance, disturbance and inconvenience. Lands App. 1.206.

On December 19, 2023, Marianna Lands filed with FEMA a Notice of Loss seeking damages for economic and noneconomic harm for personal injury for a stroke and disability caused by the fire and flooding, resulting in pain and suffering and mental and emotional distress. Lands App. 1.200.

**6. JURISDICTION, VENUE, AND STANDING**

The Brief for Appellants does not challenge this Court's jurisdiction, the District Court's venue, the standing of Plaintiffs Lands and Paynter to bring this action, or that FEMA's preclusion of recovery of noneconomic damages is a final agency action reviewable under the

Administrative Procedure Act. This brief will not address these non-issues.

## ARGUMENT

### I. THE HERMIT'S PEAK CALF CANYON ACT UNAMBIGUOUSLY PROVIDES FOR RECOVERY OF NONECONOMIC DAMAGES UNDER NEW MEXICO LAW.

#### A. STANDARD OF REVIEW

This Court reviews *de novo* a district court's statutory construction. *Potts v. Center for Excellence in Higher Education*, 908 F.3d 610, 613 (10th Cir. 2018). When interpreting a statute, the court's primary task is to determine Congressional intent, using traditional tools of statutory interpretation. *Ibid.* The first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. *Ibid.* A statute must be interpreted by the ordinary public meaning of its terms at the time of enactment. *Bostock v. Clayton County, Georgia*, 590 U.S. 644, 654 (2020).

The Court's inquiry ends if the statutory language is unambiguous and the statutory scheme is coherent and consistent. *Potts, supra* at

613. Statutory language is evaluated by examining the language itself, the specific context in which that language is used, and the broader context of the statute as a whole. *Ibid.*

A statute is ambiguous if it is reasonably susceptible to more than one interpretation or capable of being understood by reasonably well-informed persons in two or more senses. *Dekovic v. Rubio*, 169 F.4th 1002, 1014 (10th Cir. 2026). FEMA argued in the District Court the Act is unambiguous. Lands App. 2.359: "So we believe that the Act's damages provision, in section 104(d)(4), is not ambiguous."[4] *Ibid.* Just because the parties disagree about the meaning of the Act does not mean it is ambiguous. The Court: "simply because two parties disagree on the interpretation, that doesn't make a statute ambiguous; right? Lands App. 2.363 Mr. Sydow: "That's correct." … "We think it's unambiguous in our favor, and I'm sure they think it's unambiguous in their favor." Lands App. 2.363-64

This Court may affirm on any basis supported by the record. "In reviewing the decision of a lower court, it must be affirmed if the result

[4] AUSA Nicholas Sydow represented FEMA.

is correct although the lower court relied upon a wrong ground or gave a wrong reason." *Richison v. Ernest Group, Inc.,* 634 F.3d 1123, 1130 (10th Cir. 2011). FEMA shoulders the "heavy burden" to demonstrate the District Court's error and, when necessary, explain why no other grounds can support affirmance of the district court's decision. *Ibid.*

### B. THE PLAIN AND UNAMBIGUOUS MEANING OF THE ACT REQUIRES FEMA TO AWARD NONECONOMIC DAMAGES AS PROVIDED BY NEW MEXICO LAW

The plain and unambiguous meaning of the Hermit's Peak Act, read as a whole, clearly provides for the recovery of noneconomic damages under New Mexico law. The entirety of the Act is seamless: (1) a stated purpose of compensating victims of the fire for "injuries" resulting from the fire, §102(b)(1); (2) defining the term "injury" to have the same meaning as used in the Federal Tort Claims Act, which references state law for liability and damages, §103(5); (3) providing each injured person "shall be eligible" to receive compensation for injury caused by the fire, §104(a)(1)); (4) ensuring New Mexico law is applied to damages other than those specified in the Act, §104 (c)(2); and (5) providing recovery for "actual compensatory measured by injuries suffered," excluding only (i) interest and (ii) punitive damages,

§104(c)(3). Section 104(d)(4), upon which FEMA fixes its argument, is not an exclusive list of damages but supplements the damages available under New Mexico law, with no express limitation.

**(1.) Act §102(b)(1): The Act's Purpose To "Compensate" Victims For "Injuries" Resulting From the Fire.**

In its findings and statement of purposes, Congress used the word "compensate." The word "compensate" means "to make an amendatory payment to; to recompense for an injury." Black's Law Dictionary 12th Ed. Congress did not state its purpose is to pay damages only for some injuries but not others or to pay only for the limited array of injuries specified in §104(d)(4).

**(2.) Act §103(5): Defining "Injury" to be the Same As Used in the FTCA.**

The Act provides the "injury" to be compensated has the same meaning as used in the FTCA.

> <u>§103(5) INJURY:</u> "The term injury has the same meaning as the term injury or loss of property, or personal injury or death as used in section 1346(b) of title 28, United States Code."

The word "injury" means "the violation of another's legal right, for which the law provides a remedy; a wrong or injustice." Black's Law

Dictionary 12th Ed. The Federal Tort Claims Act contains no further statutory definition of "injury" other than "injury or loss of property, or personal injury or death." 28 U.S.C. §1346(b)(1). Rather, 28 U.S.C. §1346(b)(1) grants district courts "exclusive jurisdiction of civil actions against the United States for injury or loss of property or personal injury or death…under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." The FTCA makes the United States liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances…" 28 U.S.C. §2674. As a result, the extent of the United States' liability for damages under the FTCA is generally determined by reference to state law. *Molzof v. United States*, 502 U.S. 301, 305 (1992). Since the acts or omissions causing the fire occurred in New Mexico, the law of New Mexico applies to determine the "injury" for which the Act provides compensation.

**(3.) Act §104(a)(1): FEMA Shall Pay Compensation for Injuries Caused by the Fire.**

Section 104(a)(1) sets forth the Congressional mandate for compensation for the victims of the fire:

> (a) IN GENERAL. -----
>
> (1) COMPENSATION --- Each injured person shall be eligible to receive from the United States compensation for injury suffered by the injured person as a result of the Hermit's Peak/Calf Canyon Fire, subject to the availability of appropriations and subject to the Administrator making the determinations required under subsection (d).

When Congress uses the mandatory term "shall," there is no discretion to do other than what Congress commands. *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1191 (10th Cir. 1999). Shall means shall.

The word "compensation" means "payment of damages, or any other act that a court orders to be done by a person who has caused injury to another; [i]n theory, compensation makes the injured person whole." Black's Law Dictionary 12th Ed. The word "determination" means "the act of deciding something officially; esp. a final decision by a court or administrative agency." Black's Law Dictionary 12th Ed.

FEMA mistakenly argues the "determinations required under subsection (d)" refer to the damages enumerated in §104(d)(4). But

§104(d)(1)(B) sets forth the only four "determinations" FEMA can make when determining compensation, none of which have anything to do with §104(d)(4). FEMA ignores the subsection controlling what determinations FEMA is to make.

> PARAMETERS OF DETERMINATION – In determining and settling a claim under this Act, the Administrator shall determine *only* –
> (i) whether the claimant is an injured person;
> (ii) whether the injury that is the subject of the claim resulted from the Hermit's Peak/Calf Canyon Fire;
> (iii) whether the person or persons are otherwise eligible to receive any amount determined under clause (iv); and
> (iv) whether sufficient funds are available for payment and, if so, the amount, if any, to be allowed and paid under this Act.

§104(d)(1)(B)(italics added).

The word "only" precludes the Administrator from imposing additional requirements for or restrictions on recovery.

The word "determinations" does not appear in §104(d)(4). The only place the word "determines" appears in §104(d)(4) is in the final discretionary subsection of each of the three listed categories of economic damage, which gives the Administrator discretion to award any other loss he/she determines to be appropriate for that particular category. Surely, Congress did not intend the broad language of §104(a)(1) to be limited to the discretionary damages the Administrator may determine.

The Act requires FEMA to compensate claimants for "injury" caused by the fire and limits FEMA's permissible determinations.

**(4.) Act §104(c)(3): The Extent of Damages Is Actual Compensatory Damages Measured By The Injuries Suffered.**

The Act specifies the extent of damages to be actual compensatory damages, excluding only prejudgment interest and punitive damages.

> (3) EXTENT OF DAMAGES. -- Any payment under this Act --
> (A) shall be limited to actual compensatory damages measured by injuries suffered; and
>
> (B) shall not include --
> (i) interest before settlement or payment of a claim; or
> (ii) punitive damages.

§ 104(c)(3).

The plain meaning of this language is recoverable damages are limited to compensatory damages that are actually suffered, excluding only prejudgment interest and punitive damages.

The plain meaning of the phrase "actual compensatory damages" includes noneconomic damages. No matter where one looks for a definition, the meaning is the same. "Compensatory damages" are

"[d]amages sufficient in amount to indemnify the injured person for the loss suffered." Black's Law Dictionary, 12th Ed.

Unlike punitive damages, compensatory damages depend on the nature and extent of harm to a victim caused by tortious conduct, which can include noneconomic damages. (New Mexico Uniform Jury Instructions 1807 and 1807A.) New Mexico courts have described actual or compensatory damages as "the measure of a loss." *Sanchez v. Clayton*, 1994-NMSC-064, ¶ 11, 117 N.M. 761, 766, 877 P.2d 567, 572. "The purpose of compensatory damages is to make the injured party whole by compensating it for losses." *Central Security and Alarm Co., Inc., v. Mehler*, 1996-NMCA-060, ¶ 11, 121 N.M. 840, 846, 918 P. 2d 1340, 1346.

FEMA, however, attempts to create a "donut hole" exclusion of noneconomic damages where none exists.

> Nor is there any such thing as a "canon of donut holes," in which Congress' failure to speak directly to a specific case that falls within a more general statutory rule creates a tacit exception. Instead, when Congress chooses not to include any exceptions to a broad rule, courts apply the broad rule.

*Bostock v. Clayton County, Georgia, supra* at 669.

Put another way, when a statute specifies exceptions to its general application, such as for prejudgment interest and punitive damages, other exceptions not explicitly mentioned are excluded. *Contreras-Bocanegra v. Holder*, 678 F.3d 811, 817 (10th Cir. 2012).

The Act's general application providing for recovery of "actual compensatory damages," excluding only prejudgment interest and punitive damages, tracks the FTCA. 28 USC §2674. Any tacit exclusion, as FEMA claims, is impermissible.

FEMA attempts to distinguish "extent" of damages from "types" of damages. Brief for Appellants, Appellate ECF 43, at 37. But the word "types" of damages does not appear in the Act. The word "extent" means the range or scope of something. Merriam-Webster Dictionary. Noneconomic injury is within the scope of damages Congress intended to compensate.

**(5.) Act §104(c)(2): Applicability of New Mexico Law.**

Virtually ignoring the import of the statutory language set forth above, FEMA's misreading of §§104(c)(2) and 104(d)(4) is the crux of its appeal. Section 104(c)(2) provides:

> APPLICABILITY OF STATE LAW. --- Except as otherwise provided in this Act, the laws of the State of New Mexico

shall apply to the calculation of damages under subsection (d)(4).

Harmonizing the language of the entire statue, as the Court must, the best reading of §104(c)(2) is Congress intended FEMA to apply New Mexico law to damages made allowable in §104(d)(4) except as specifically provided in the Act. This subsection reinforces Congress' intent that New Mexico law measure damages overall with the exceptions of remedies specified in §104(d)(4), a number of which may not be recoverable under New Mexico law.

For examples, there is undefined support for damages in New Mexico law for "reforestation," "damage to physical infrastructure," and "the cost of lost subsistence," §104(d)(4)(A), because the measure of damages for harm to real property is typically diminution of value. New Mexico Rules Annotated ("NMRA") 13-1819 (referred to as "New Mexico Uniform Jury Instructions" or "UJI"). Nor is there a measure of damages in New Mexico law for the cost of reasonable efforts to reduce the risk of wildfire, flood, or other natural disaster in certain counties to risk levels prevailing in those counties before the fire, which are incurred within three years of the promulgation of FEMA's Hermit's Peak regulations. §104(d)(4)(C)(vii). Nor is there a measure of damages

under New Mexico law for a disaster assistance loan from the Small Business Administration. §104(d)(4)(C)(ix). The list goes on, but the point is §104(d)(4) includes, but not exclusively, damages which Congress intended to compensate but for which there is limited measure in New Mexico law.

FEMA argues the phrase "calculation of damages under subsection (d)(4)" restricts recoverable damages to "only" those specified in §104(d)(4). FEMA inserts the word "only" when the word does not exist in the text. FEMA's interpretation directly conflicts with the eligibility of every injured person to receive compensation for injury suffered as a result of the fire. §104(a)(1). FEMA fails to read the statute as a whole, giving it only a narrow, selective reading.

Next, FEMA unreasonably restricts the meaning of the term "calculation" to mean "mathematical computation." Judge Browning reasonably dispenses with FEMA's short-sighted argument, providing examples of New Mexico's Uniform Jury Instructions, which provide various methods for calculating economic and noneconomic damages. Memorandum Opinion and Order ("MOO") 12/17/2024, App. 2.128. The District Court opines that "FEMA merely implies this overly narrow

definition of 'calculation,' and overlooks other legitimate yet broader definitions of 'calculation,' as well as relevant New Mexico state law that more broadly concerns the determination of damages." *Id.* First, Merriam-Webster defines "calculation" as: (i) the process or an act of calculating; and (ii) studied care in analyzing or planning. Calculation, Merriam-Webster, https://www.merriam-webster.com/dictionary/calculation (last updated November 30, 2024). Merriam-Webster also defines "calculating" as: (i) to determine by a mathematical process; (ii) to reckon by exercise of practical judgment; (iii) to solve or probe the meaning of; (iv) to design or adapt for a purpose. Calculate, Merriam-Webster, https://www.merriam-webster.com/dictionary/calculate (last accessed November 1, 2024). *Id.* "The Court does not interpret 'calculation' to exclusively mean a mathematical calculation, at the expense of other practical definitions such as a judgment, analysis, plan, or design." *Id.*

The District Court correctly observed the New Mexico Civil Jury Instructions include several different methods for a jury to calculate personal property damages, such as: NMRA 13-1812, compare the value before and after the loss; NMRA 13-1814, award of depreciation value;

NMRA 13-1815, award the repair plus depreciation value, NMRA 13-1817, among other ways. *Id.* at 2.129. The Court continues by comparing the New Mexico Uniform Jury Instructions, NMRA 13-1807, Pain and suffering, with NMRA 13-1807A, Loss of enjoyment of life, perceiving:

> No fixed standard exists for deciding the amount of these damages. You must use your judgment to decide a reasonable amount to compensate the plaintiff for the pain and suffering.

The New Mexico Civil Jury Instructions, moreover, show that New Mexico state law has no "fixed standard" or mathematical calculation for determining noneconomic damages. *See*, NMRA 13-1807, 13-1807A. "A juror must calculate noneconomic damages based on what is reasonable. *See,* NMRA 13-1807, 13-1807A." *Id.* at 2.130.

The District Court's interpretation of "calculation" is the reasonable one, while FEMA's is not. FEMA cherry picks one of several dictionary definitions of the word "calculation," while the District Court's interpretation encompasses a broader definition of the word, which is supported by dictionary definitions, New Mexico law about the determination of damages, and which meshes with the overall thrust of the Act to compensate for injuries suffered.

**(6.) Act §104(d)(4) – "Allowable Damages" – Is Supplemental, Not Exclusive.**

Section 104(d)(4), upon which FEMA pins its hopes, addresses only three categories of economic damages: loss of property, business loss, and financial loss.

The "loss of property" category can be used as an example.

*4) ALLOWABLE DAMAGES.—*

> (A) LOSS OF PROPERTY.—A claim that is paid for loss of property under this Act may include otherwise uncompensated damages resulting from the Hermit's Peak/Calf Canyon Fire for—
>
> (i) an uninsured or underinsured property loss;
>
> (ii) a decrease in the value of real property;
>
> (iii) damage to physical infrastructure, including irrigation infrastructure such as acequia systems;
>
> (iv) a cost resulting from lost subsistence from hunting, fishing, firewood gathering, timbering, grazing, or agricultural activities conducted on land damaged by the Hermit's Peak/Calf Canyon Fire;
>
> (v) a cost of reforestation or revegetation on Tribal or

> non-Federal land, to the extent that the cost of reforestation or revegetation is not covered by any other Federal program; and
>
> (vi) any other loss that the Administrator determines to be appropriate for inclusion as loss of property.

The word "allowable" means "permissible." Black's Law Dictionary 12th Ed. Hence, the word "allowable" has a permissive, not preclusive, meaning. It does not follow from the word "allowable," as FEMA argues, other damages are excluded. If Congress had so intended, it would have added the word "only" in front of "Allowable." The permissive awarding of the damages listed in §104(d)(4) fits with the intent of Congress to make whole injured persons for injuries caused by the fire.

The prefatory phrase of each category of economic damages supports the District Court's interpretation that §104(d)(4) is supplemental, not exclusive. "A claim that is paid for [type of loss] under this Act may include otherwise uncompensated damages resulting from the Hermit's Peak/Calf Canyon Fire for…." §104(d)(4)(A).

The word "may" in §104(d)(4) is also permissive, not mandatory or exclusive. As the District Court held, the phrase "otherwise uncompensated" logically refers to other provisions of the Act, meaning damages for injuries not compensated by the application of New Mexico

law. This interpretation is strengthened by the fact many of the damages specified in §104(d)(4) are either not recoverable, or unique under New Mexico law.

FEMA's argument the phrase "otherwise uncompensated" serves only to prevent double recovery makes surplusage of §104(d)(1)(C), which requires the Administrator to reduce any payments by the amounts received by a claimant from insurance or "other payments," such as money advanced through public disaster assistance under the Stafford Act, 42 U.S.C. §5121, *et seq.*[5]

If Congress intended §104(d)(4) to be exclusive, rather than permissive, it would have said so. But Congress stated otherwise.

Section 104(d)(4) does not mention personal injury or death, which are specifically included in §103(5)'s definition of injury. It beggars belief that Congress, as FEMA argues, intended to exclude recovery of

---

[5] The Robert T. Stafford Disaster Relief and Emergency Assistance Act, Public Law 93-288, as amended, 42 U.S.C. 5121 et seq., is the system Congress created in place today by which a presidential disaster declaration or an emergency declaration triggers financial and physical assistance through the Federal Emergency Management Agency (FEMA). Stafford monetary relief is separate from Hermit's Peak Act monetary relief assistance.

damages for personal injury and death while at the same time including personal injury and death in its definition of injury for which an injured person is eligible to recover damages under §§103(5) and 104(a)(1).

FEMA's argument §104(d)(4) excludes by omission recovery of noneconomic damages is a "donut hole" argument. Section 104(d)(4) does not plainly state its list of "allowable" damages is exclusive of other damages nor does it define the entire universe of "injury" for which claimants are entitled to recover under §104(a)(1). Otherwise, Congress would have included personal injury and wrongful death in §104(d)(4), which it did not.

Rather, this subsection expresses an intent to ensure the specified damages in §104(d)(4) are recoverable in addition to any other compensatory damages recoverable under New Mexico law.

Each category of damages in §104(d)(4) concludes with "any other loss that the Administrator determines to be appropriate for inclusion as loss of property." Read in conjunction with the remainder of the Act, this subsection authorizes the Administrator to add types of recovery, but it does not authorize the Administrator to exclude recovery of damages for which compensation is otherwise required by the statute.

As Judge Browning observed, FEMA attempts to "imply" exclusions where none exist. Lands App. 2.331-32; 2.340-41.

FEMA's interpretation makes much of the statute surplusage. If §104(d)(4) is interpreted as the "be all and end all" of recoverable damages, the following sections of the Act become surplus nullities: (1) the definitions of injury and injured person, §§103(4) and (5); (2) the general rule of recovery for injury, §104(a)(1); the extent of damages, §104(c)(3); the parameters of determination, §104(d)(1)(B); and the reduction of payments, §104(d)(1)(C). The canon against surplusage requires every word be given effect, and no word be without consequence. *Nielsen v. Preap*, 586 U.S. 392, 414 (2019). FEMA's interpretation is the gold standard of surplusage, effectively gutting much of the statute as meaningless.

FEMA argues the statutory purpose of expeditious settlement of claims in §102(b)(2) favors exclusion of recovery of noneconomic damages because of their complexity. Brief for Appellants, ECF 43, p. 25-6. The argument is absurd and displays ignorance of the complexity of and necessity for expert opinion to determine damages for property and business loss.

Using the traditional tools of statutory interpretation, as *Loper Bright* directs, the intent of Congress is clearly discernible. The Hermit's Peak Act clearly and unambiguously provides for the recovery of noneconomic damages under New Mexico law.

### C. THE DISTRICT COURT CORRECTLY FOUND FEMA'S INTERPRETATION OF THE HERMIT'S PEAK ACT TO BE INCONSISTENT WITH ITS INTERPRETATION OF THE CERRO GRANDE FIRE ASSISTANCE ACT

The District Court found FEMA's interpretation of the Hermit's Peak Act to be inconsistent with its interpretation of the identical Cerro Grande Fire Assistance Act (Public Law 106-246, 114 Stat. 511 (2000).) MOO 12/17/2024, App. 2.230. Of course, the two statutes cannot be literally identical, because the names of the fires are different. But in sum and substance, the statutes are identical.

FEMA argues the two statutes are not identical, because for compensation for injuries suffered as a result of the fires, the Cerro Grande Act includes an additional phrase "and …damages described in subsection (d)(4), as determined by the Director." The distinction is without a difference. Both statutes provide for compensation for injuries suffered, and both provide for damages described in §104(d)(4). FEMA

argues the absence of this conjunctive phrase in the Hermit's Peak Act limits recoverable damages to those specified in §104(d)(4), which is unreasonable and flies in the face of the plain meaning of §§103(5) and 104(a)(1).

As noted in the District Court's Opinion, FEMA's interpretation of the Cerro Grande Act, with regard to the recovery of noneconomic damages, is diametrically opposed to its interpretation of the Hermit's Peak Act, which is arbitrary and capricious. MOO 12/17/2024, App. 2.230. FEMA does not disagree its interpretations of the two statutes are opposite with regard to the recovery of noneconomic damages.

## II. THE HERMIT'S PEAK ACT UNMISTAKABLY WAIVES THE SOVEREIGN IMMUNITY OF THE UNITED STATES FOR RECOVERY OF NONECONOMIC DAMAGES UNDER NEW MEXICO LAW

A suit against the government is permitted only when a statute unmistakably allows it. *Department of Agriculture Rural Development Rural Housing Service v. Kirtz,* 601 U.S. 42, 48 (2024). Congress need not state its intent in any particular way, nor need Congress use "magic words." *Ibid.* Congress need not make a waiver in a single section or in statutory provisions enacted at the same time. *Id.* at 48-9. "But, one

way or another, a waiver of sovereign immunity must be "unmistakably clear in the language of the statute." *Id.* at 49.

This standard is referred to as the "clear statement" rule. *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382, 388 (2023). The clear statement question is simply whether, upon applying "traditional" tools of statutory interpretation, Congress's abrogation of sovereign immunity is "clearly discernible" from the statute itself. *Ibid.*

The clear statement rule is a canon of statutory interpretation, which is to be applied only after a statute has been interpreted by means of the traditional tools of interpretation. *Daley v. Ceja*, 158 F. 4th 1152, 1156-7 (10th Cir. 2025). Citing *Loper Bright*, this Court stated:

> That said, we may not resort to the sovereign immunity canon at the first sign of any potential ambiguity in the text as this would abdicate our responsibility to interpret the statutes in front of us. [cite omitted] Before turning to the canon, we must exhaust all "traditional tools of statutory construction." [cite omitted] After scrutinizing the language "in light of traditional interpretive tools," we may discover that what originally appeared ambiguous has a clear meaning. [cites omitted] Put differently, we cannot reflexively apply the sovereign immunity canon to adopt an immunity preserving interpretation simply because that interpretation appears plausible on preliminary review. We apply

> the canon only after analyzing the statutory language and finding it ambiguous.

*Id.* at 1157.

If the meaning of a statute is ambiguous as to whether Congress has consented to suit against the government, the statute must be interpreted in favor of sovereign immunity. *Federal Aviation Administration v. Cooper,* 566 U.S. 284, 290 (2012). However, if the meaning of a statute is unmistakable and clearly discernible, there is no ambiguity, and therefore there can be no plausible alternate interpretation. *Daley v. Ceja*, *supra* at 1156.

A statute is ambiguous "if it is reasonably susceptible to more than one interpretation" or "capable of being understood by reasonably well-informed persons in two or more different senses." *Dekovic v. Rubio,* 169 F. 4th 1002, 1014, (10th Cir. 2026).

Recent decisions by the Supreme Court and Tenth Circuit demonstrate careful adherence to these principles. In each of these recent cases, the courts examined the texts of several statutory provisions to find waivers of sovereign immunity, rejecting in detail arguments of alleged plausible other interpretations, which would have resulted in sovereign immunity. *See, e.g., Lac du Flambeau, Department*

*of Agriculture, Daley v. Ceja,* and *Kimel v. Florida Board of Regents,* 528 U.S. 62, 73 (2000).

Although not a canon of interpretation, the Tenth Circuit finds Congressional purpose stated in a statute to be relevant to interpretation of sovereign immunity waivers. *Daley v. Ceja*, supra at 1162. The relevant purpose here, of course, is "to compensate victims of the Hermit's Peak/Calf Canyon Fire, for injuries resulting from the fire." §102(b)(1).

Because the Act is unambiguous as to the recovery of noneconomic damages under New Mexico law, FEMA's interpretation is not plausible. FEMA's interpretation is unreasonable, relying as it does on a few selected provisions, ignoring the whole, doing violence to the plain meaning of statutory language, making much of the Act surplusage, and depending on "donut hole" tacit exceptions.

The Act's waiver of sovereign immunity for noneconomic damages is strengthened by its parallels to the Federal Tort Claims Act. The Act's definition of injury adopts that of the FTCA, §103(5), and its exclusions of prejudgment interest and punitive damages are the same as the FTCA; *see*, §104(c)(3); 28 U.S.C. §2674. The FTCA waives the

sovereign immunity of the United States for injury or loss of property, personal injury, or death to the extent a private person would be liable. *United States v. Yellow Cab Company,* 340 U.S. 543, 547-8 (1951).

FEMA appears to rely on *Federal Aviation Administration v. Cooper, supra,* the result of which is inapposite. There, the court held the phrase "actual damages" did not extend the scope of the Privacy Act's waiver of sovereign immunity to "general" (noneconomic) damages. The District Court's opinion here spends several pages distinguishing the Privacy Act at issue in *FAA v. Cooper* from the Hermit's Peak Act. MOO 12/17/2024, App. 2.250-2.255. The District Court correctly noted the language and contexts of the Privacy Act and the Hermit's Peak Act are quite different.

In *FAA v. Cooper*, the parallel of the Privacy Act to libel *per quod* and slander suggested "actual damages" means "special" (economic) damages.  By contrast, the parallel of the Hermit's Peak Act to the Federal Tort Claims Act suggests "actual compensatory damages" includes both economic and noneconomic damages. Clinching the result in *FAA v. Cooper, supra* at 297, was the fact Congress considered but refused to authorize "general" damages in the Privacy Act.  But there is

no evidence Congress considered and refused to include recovery of noneconomic damages in the Hermit's Peak Act. The holding of *FAA v. Cooper* does not apply.

The District Court correctly held the Hermit's Peak Act unmistakably waives the federal government's sovereign immunity for claims for noneconomic damages provided under New Mexico law.

## III. THE HERMIT'S PEAK ACT MANDATES NEW MEXICO LAW "SHALL APPLY"

### A. BECAUSE THE ACT ACCEPTS LIABILITY FOR TORT DAMAGES UNDER NEW MEXICO LAW, THE COURT NEED NOT MAKE A FACTUAL DETERMINATION OF TORT LIABILITY

Under the Hermit's Peak Act, the United States accepted liability for tort damages recoverable under New Mexico State law. *See*, §102(a)(8) and §104(c)(2). All that remains is to determine which New Mexico common law torts are potentially applicable as a matter of law. FEMA does not dispute that no factual findings are required under the Act. Lands App. 2.417-18. Lands and Paynter agree that assessing the appropriate New Mexico tort law is a legal determination to ascertain the extent of damages much like an *Erie* prediction. Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)("*Erie*"), federal district

courts must apply state law under certain circumstances, such as when a statute requires or when exercising diversity jurisdiction. The Act compels the court to apply New Mexico law. §104(c)2. Judge Browning correctly observed that he must assess the potential New Mexico tort causes of action in order to determine applicable tort damages. S*ee,* MOO 07/18/25, App. 4.93.

Lands joined with the Court observing that no findings of fact are necessary. These are questions of law, given that the government has already accepted and established liability of the United States and the Act requires the application of New Mexico state law to determine damages. Lands App. 2.418.

## B. THE COURT MAY PREDICT THE NEW MEXICO TORTS OF NEGLIGENCE, TRESPASS, PRIVATE NUISANCE AND STRICT LIABILITY ALLOW FOR NONECONOMIC DAMAGES

### (1.) Federal Courts Regularly Predict State Law Under The FTCA.

The Hermit's Peak Act requires FEMA to entreat New Mexico law throughout the Act. In §103(5), the term personal injury and loss of property have the same meaning as set forth in the FTCA for implementation of state law. Having accepted legal responsibility for

the wildfire, the Act consigns FEMA to pay compensatory damage commensurate with New Mexico tort law. §§104(c)(2) and (3). Federal courts regularly predict state substantive law under *Erie*. *See*, *Racher v. Westlake Nursing Home Limited Partnership*, 871 F.3d 1152, 1164 (10th Cir. 2017)("[W]hen state law creates a cause of action, it also defines the scope and contours of that cause of action."). The Act thrusts upon the District Court the responsibility of assessing the scope of available state law damages. *See also, Wankier v. Crown Equip. Corp.,* 353 F.3d 862, 866 (10th Cir. 2003). The Act calls upon this court to predict New Mexico law when calculating damages.

**(2.) The Court's Reliance on Congress' Findings and Purposes.**

The Court primarily relied upon Congress' findings, §102(a), to assess applicable New Mexico tort law. Congress determined that:

> (2) On April 6, 2022, the prescribed burn, which became known as the "Hermit's Peak Fire," exceeded the containment capabilities of the Forest Service, was declared a wildfire, and spread to other Federal and non-Federal land;
>
> (3) On April 19, 2022, the Calf Canyon Fire, also in San Miguel County, New Mexico, began burning on Federal land and was later identified as the result of a pile burn in January 2022 that remained dormant under the surface before re-emerging;

> (7) On May 20, 2022, U.S. Forest Service Chief Randy Moore ordered a 90-day review of prescribed burn policies to reduce the risk of wildfires and ensure the safety of the communities involved;

§102(a). The District Court discerned these three findings of Congress and a review of the administrative record to conclude that the Forest Service breached its duty of reasonable care "not to damage people's property and breached that duty of care by failing to contain a prescribed burn and allowing a dormant pile burn to reemerge." MOO 07/18/25, App. 4.241, *citing Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶6, 134 N.M. 43, 47-48, 73 P.3d 181, 186.) Judge Browning found that the Forest Service's "mismanagement of forest fire activity creates an unreasonable risk of harm" which caused "destruction of property, and displacement of people [that] significantly outweighs any benefit of the prescribed burn and the dormant burn pile." MOO 07/18/25, App. 4.241.

The Court found that the Forest Service was reckless, *viz.*, the "intentional doing of an act with utter indifference to the consequences" such as "when there is a high risk of danger, conduct that breaches the duty of care is more likely to demonstrate recklessness," *Id. citing* NMRA 13-1827. Judge Browning found that "because prescribed burns

and pile burns have a high risk of danger and high risk of forest fires, the Forest Service's conduct of mismanagement demonstrates recklessness." *Id.* "The Court, therefore, concludes that the Forest Service's instigation of the Hermit's Peak/Calf Canyon Fire is an invasion of the Plaintiffs' land that constitutes recklessness, because the Forest Service mismanages its forest fires even knowing that mismanagement can create an unreasonable risk of harm." *Id.*

**(3.) The Court May Rely on the Administrative Record.**

In addition to Congress' findings, the district court may embark upon a substantive review of the whole record to determine if the agency considered relevant factors or articulated a reasoned basis for its conclusions. *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994). Congress directed FEMA to prepare and promulgate its regulations not later than 45 days of its enactment of the Act. §104(f)(1). "The focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985). At the time FEMA was preparing its

regulations, the Forest Service had already accepted responsibility for the fire such that there was no concern for liability. §102(a)(8).

The Forest Service placed into the administrative record *The Gallinas – Las Dispensas Prescribed Fire Declared Wildfire Review, US Forest Service,* (referred to as "The 90-Day Review"). The Chief of the Forest Service, Randy Moore, commissioned the Review to determine the "devastating impact of this fire to the communities and livelihoods of those affected in New Mexico [and which] demanded this level of review to ensure *we understand how this tragic event unfolded*." Lands App. 1.37 (emphasis added.). The Chief's Review was a facts investigation to ascertain the circumstances surrounding the cause of the fire.

In the Chief's Review, he admits that "wildfire mitigation" is "inherently dangerous." *Id.* The Chief observed that "[w]hile innovative tools associated with robust analysis of the fire environment have been developed and are readily available, *they are not routinely internalized into the planning and implementation process of prescribed fire."* Lands App. 1.39 – 1.40 (italics added).

The Review acknowledges the potential for "Large Scale, High-intensity Crown Fires." The Review cites to severe drought, and over-growth of ponderosa pine, mixed conifer, and spruce-fir requiring a sense of urgency to "catch-up" and initiate the Hermit's Peak prescribed burns. The intent of the Hermit's Peak prescribed burn was to: "[r]educe potential for large-scale, high-intensity crown fires[6] and [r]educe risk to life, property and natural resources." Lands App. 1.38. Instead, the Forest Service prescribed burn set in motion exactly what it professed to avoid. The prescribed burn escaped its boundaries morphing into a large scale, high-intensity crown fire. A crown fire occurs when high winds ladder the fire from the forest floor to the top of the tall pines and travel with the speed of the wind.

---

[6] According to USDA Forest Service White Paper F14-SO-WP-SILV-37, entitled: *Stand Density Thresholds Related to Crown Fire Susceptibility,* dated February 2017, a Crown fire is defined as:

"Crown fire, one of the most severe disturbance events that a forest ecosystem experiences (cite omitted), spreads quickly through the forest canopy, releasing tremendous amounts of heat and energy." *See*, USDA Forest Service White Paper, *Stand Density Thresholds Related to Crown Fire Susceptibility,* dated February 2017, https://www.fs.usda.gov/media/167200.

Investigators identified the explosive breakout of the combined Hermit's Peak/Calf Canyon Wildfires on April 22, 2022. The combined fires were spread by high winds sustained at 40 to 50 miles per hour with gusts up to 67 mph with relative humidity dropping to 6 percent. *See*, Lands App. 1.140. FEMA's argument that the Hermit's Peak/Calf Canyon Wildfire is not inherently dangerous simply does not square with reality.

**(4.) The Court's Reliance on the '90-Day Review' Is Not Subsequent Remedial Evidence.**

At the direction of Congress, the Act mandates that FEMA "shall promulgate and publish in the Federal Register interim final regulations for the processing and payment of claims." §104(f)(1). Thereafter FEMA relied upon the investigative 90-Day Review to prepare its regulations and submitted the review to the District Court as part of the Administrative Record. Pursuant to the District Court's Scheduling Order, Lands App. 1.189, and Order Adopting Stipulation to Supplement to the Administrative Record, Lands App. 1.246, FEMA lodged the administrative record which included the 90-Day Review, and the District Court accepted the 90-Day Review without objection by

FEMA to its own governmental review and investigation. Lands App. 1.191. Petitioners Marianna Lands and Charles Paynter filed a motion to supplement the record. Lands App. 1.67. Defendants filed a response again without objection to the proposed administrative record, Lands App. 1.118, and on May 31, 2024, the Court held a hearing on the lodgment and supplements to the record. Lands App. 1.252. Finally, on November 12, 2024, the District Court accepted the final record and entered the Order Adopting Stipulation to Supplement to the Administrative Record, Lands App. 1.246.

FEMA failed to object to the inclusion of the 90-day Review, and all other documents therein, and thereby waived any objection it might have had under Fed. R. Evid 407.

FEMA submitted its Response Brief to Judge Browning together with the final administrative record entreating him to rely on the documents contained in the record for his merits determination on Petitioners' APA Challenge to Hermit's Peak/Calf Canyon Fire Assistance Act Final Rule, Lands App. 1.223, without raising or objecting to the inclusion of any documents in the administrative record. After the District Court had relied upon the administrative

record, including the 90-Day Review, in issuing its 12/17/2024 MOO, App. 2.177, and Final Judgment, App. 2.282, FEMA for the first time raised its Rule 407 objection in its Fed. R. Civ. P. 59 Motion to Amend the Final Judgment. App. 3.22.

While the District Court relied principally on the three Congressional findings in the Act, App. 2.177, the District Court may under APA §706 review the whole record to determine FEMA's compliance with the Act. *Id.* Appellants now ask the District Court to un-ring the bell after the Court relied upon the administrative record to arrive at its Final Judgment. Section 706(2) of the Administrative Procedure Act contemplates review of the administrative record to determine whether an agency's "action, findings, and conclusions" satisfy §706(2)(A)-(F). *See, Department of Commerce v. New York,* 586 U.S. 752, 790 (2019)(Gorsuch, J., concurring). The government makes no argument that the 90-Day Review is not relevant to Congress' or the agency's preparation of its regulations. Instead, it makes a *post-hoc* objection to the 90-Day Review after the District Court addressed the merits. *See*, Brief for Appellants, Appellate ECF 43, p. 55-56.

The Forest Service complains that *"the district court findings"* are unsupported by the Congressional findings expressed in the Act, which establish that the Forest Service's actions were negligent or reckless as a matter of law. *Id.* at 56-57. (Emphasis added.) In claiming Congress' findings and the Administrative Record do not support the Court's damage determinations as a matter of law, FEMA inappropriately continues to argue that the Court made findings of fact rather than a legal assessment of potentially available New Mexico tort damages, while agreeing no findings of fact are required.

The Forest Service continues to disavow its own investigative review commissioned by the Chief of the Forest Service, claiming that it was not negligent and reckless. The Service myopically claims that there was "insufficient evidence to establish the Forest Service's liability under New Mexico law. For instance, that the *prescribed burn exceeded containment* and the pile burn reemerged says little about whether the Forest Service carelessly or recklessly handled or responded to the Fire as contemplated under New Mexico law." *Id.* at p. 55 (Emphasis added). However, in the next breath, the Forest Service admits that its own Review was highly relevant and "probative." *Id.* at

55-56. The Forest Service continues to argue, improperly, that findings of fact are required.

The Forest Service fails to acknowledge the Chief of the Forest Service's party admission that "wildfire mitigation activities" (i.e. prescribed burns) not only buttress Judge Browning's legal conclusion that prescribed burns are "inherently dangerous" but confirm beyond a doubt the ultra-hazardous nature of the activity. The Chief's admission that "wildfire mitigation" is "inherently dangerous" is a party admission. *See*, Fed. R. Evid. 801(d)(2)(A). An out-of-court statement is admissible for its truth of the matter under Rule 801(d)(2)(A) to the extent that it is offered against the person who made the statement. The Chief of the Forest Service, Chief Moore, had the "representative capacity" to bind the Forest Service. *See, United States v. DeLeon*, 287 F.Supp.3d 1187, 1256 (D.N.M. 2018)(Browning, J.).

After robust review of the record and law, the District Court found that the Forest Service's invasion onto Plaintiffs' property was a nuisance, because it was negligent, reckless, and inherently dangerous. FEMA argues this determination was flawed because the District Court considered the Congressional Findings and the Forest Service's Review

in reaching its determination, and, FEMA believes, this evidence was insufficient and barred by Rule 407. FEMA makes this conclusory argument without any legal support. *See*, Brief for Appellants, Appellate ECF 43, p.55-56.

FEMA's argument fails for two reasons: (1) FEMA waived its argument on the admissibility of this evidence it placed in the administrative record; and (2) Federal Rule of Evidence 407 does not prohibit the consideration of the Forest Service's Review or the Congressional Findings. Lands and Paynter address each of the above in turn.

First, FEMA has waived any objection as to the District Court's consideration of the Review and Congressional Findings. The United States Supreme Court in *Thomas v. Arn*, 474 U.S. 140, 147 (1985), upheld the "waiver rule" when a litigant failed to object to a recommended decision of a magistrate under Fed. R. Civ. P. 72(b), in which the district court made a *de novo* determination of the magistrate's recommendation upon the record. The Tenth Circuit embraced the adoption of the waiver rule in *United States v. One Parcel of Real Property, with Buildings, Appurtenances, Improvements, &*

*Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1059-60 (10th Cir. 1996), sustaining the rationale expressed by the Supreme Court in that "[t]he filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. at 147.

This Court held that the filing of objections "advances the interests of the Magistrate's Act [in our case the APA §706 administrative record], including judicial efficacy." *One Parcel* at 1059. The Court approved the adoption of the waiver rule, reasoning that "precluding appellate review of any issue not contained in objections, prevents a litigant from 'sandbagging' the district court." *Id.* at 1059-60.

The waiver rule has been extended to other situations such as a district court's sentencing after a plea agreement. *United States v. Marin*, 2026 WL 83760 (10th Cir. January 12, 2026); *United States v. Brunton*, 218 Fed. Appx. 816, 2007 WL 61468 (10th Cir. 2007)(Waiver rule applied to plea agreement made knowingly and voluntarily, and will not result in a miscarriage of justice.); *United States v. Sosa,* 2016

WL 9776569 (D.N.M. December 29, 2016)(Brack, J.)( failure to object to a magistrates judge's recommendation, the district court will generally conduct a *de novo* review; however, a party's objections must be both timely and specific.).

In addition to the Waiver Rule, expressed by the Supreme Court in *Thomas v. Arn,* is the 'invited error' doctrine. After having designated the administrative record to include the Review and other documents therein, FEMA now raises this evidentiary argument for the first time post-judgment, attempting to exclude investigative material it relied upon to prepare its regulations.

FEMA is asking that this Court make an evidentiary determination to exclude evidence from the administrative record and then review *de novo* the sufficiency of that modified administrative record. FEMA makes this request despite being the party that introduced the Review into evidence, failed to object below, and failed to cite any legal support for this argument. FEMA's request is error which it invited and thus waived the argument before Judge Browning.

FEMA cannot appeal this evidentiary issue, because FEMA invited this error by introducing the Review into evidence and failing to

object. Courts "assume[] the agency properly designated the Administrative Record absent clear evidence to the contrary." *Citizens for Alternatives to Radioactive Dumping v. U.S. Dept. of Energy*, 485 F.3d 1091, 1097 (10th Cir. 2007) (internal citation and quotation marks omitted). And to overcome that presumption, the challenging party must make a "strong showing of improper behavior in development of the record." *Id.*

What is unique here is that FEMA is the agency that designated the administrative record to include the Review, and FEMA is also the party challenging the inclusion of the Review. Lands App. 1.191 and 1.194. In that way, FEMA invited this alleged error. *See John Zink Co. v. Zink*, 241 F.3d 1256, 1259 (10th Cir. 2001) ("The invited error doctrine prevents a party from inducing action by a court and later seeking reversal on the ground that the requested action was error.") (Internal citation and quotation marks omitted).

FEMA induced the court to rely on particular evidence by including it within the Administrative Record for review. The District Court then reviewed that Administrative Record. Now, unsatisfied with its opinion following that review, FEMA claims the District Court

erred in considering the evidence it introduced and asks this Court to "set aside the immediate consequences" of that introduction. *See United States v. DeBerry*, 430 F.3d 1294, 1302 (10th Cir. 2005). Because "waiver bars a defendant from appealing an invited error," FEMA's argument on this issue is barred. *See United States v. Teerlink*, 141 F.4th 1126, 1131 (10th Cir. 2025) (internal citation and quotation marks omitted).

Still, the District Court gave FEMA an opportunity to object to or remove evidence it designated in the administrative record and FEMA did not do so. The court entered a scheduling order setting a deadline to "file objections, motions to complete or supplement the administrative record, or remove something from the submitted record." Lands App. 1.189(underlining added). At the scheduling conference, the district court specified that it was, "put[ting] the burden on [the parties] to object to the record, either through a motion or something along those lines . . . [.]" App. 1.234, lines 15-19. The District Court was clear regarding the parties' burdens and deadlines to object to the administrative record. Despite that clarity, FEMA did not object to or move to remove the Review from the administrative record. Only after

the court's substantive review of the record and entry of judgment, did FEMA argue that the Review was inadmissible under Rule 407. App 3.8. FEMA has sandbagged the Court.

FEMA's objection post-judgment is too little too late. "[C]ourts must hold parties responsible for which they advocate." *Teerlink*, 141 F.4th at 1135. FEMA introduced the Review into the record by designating and lodging an administrative record that included it. FEMA never objected to nor moved to remove the Review. Permitting FEMA to make new objections to the administrative record it designated after the District Court concluded its review and issued a decision FEMA did not like would render scheduling orders—and the deadlines contained therein—obsolete. It would also waste judicial resources to require courts to re-review administrative records post-judgment based on objections to the record that should have been made pre-review. For these reasons, FEMA cannot ask this Court to set aside evidence on appeal that FEMA itself submitted to the District Court for review and consideration.

<u>Second</u>, neither the Forest Service's Review nor the Congressional Findings are subsequent remedial measures. FEMA makes the

conclusory argument that Rule 407 prohibited the district court from considering the above evidence when assessing negligence and recklessness. But FEMA cites no support for this argument. And in fact, the case law on this issue clearly establishes that Rule 407 does not apply to post-event reports or investigations, or to non-defendants' actions. So even if this Court concludes that FEMA has not waived this argument, Rule 407 still does not apply here because the evidence at issue is not evidence of subsequent remedial measures.

Rule 407 addresses the admissibility of subsequent remedial measure—measures taken after the fact that "would have made an earlier injury or harm less likely to occur." Fed. R. Evid. 407. But Rule 407 only applies to "*actions* taken to remedy any flaws of failures." *Dow Chemical Corp. v. Weevil-Cide Co., Inc.*, 897 F.2dd 481, 487 (10th Cir. 1990) (emphasis added). Rule 407 does <u>not</u> apply to post-event reports or investigations—which are "conducted for the purpose of investigating the occurrence to discover what might have done wrong or right." *See id*; *Rocky Mountain Helicopters, Inc. v. Bell Helicopters Textron, a Div. of Textron, Inc.*, 805 F.2d 907, 918-919 (10th Cir. 1986).

This Court's distinction between remedial measures and post-event reports and investigations is largely rooted in policy considerations. For example, this Court has recognized a policy interest in encouraging parties to take remedial measures without fear of consequence. *Mehojah v. Drummond,* 56 F.3d 1213, 1216 (10th Cir. 1995)(McKay, J., dissent). That said, those policy considerations "are not as vigorously implicated where investigative tests and reports are concerned," because to the extent any policy concerns are implicated, those concerns are outweighed by "the danger of depriving injured claimants of one of the best and most accurate sources of evidence and information." *See Rocky Mountain Helicopters, Inc.*, 805 F.2d 907, 918–919 (internal citation and quotation marks omitted). In that way, "[i]t would strain the spirit of the remedial measure prohibition in Rule 407 to extend its shield to evidence contained in post-event tests or reports." *Id.*

The Forest Service's Review is a post-event investigative report. Accordingly, it is not inadmissible under Rule 407. *See* Lands App. 1.26. The Review includes a summary of the fire locations; a narrative description of the event with photos; analyses of fire plans and

environmental assessments developed before the Fire; analyses of the fire plan's implementation; findings and lessons learned; and general recommendations moving forward. *Id.* Nothing in the Review evidences concrete *action* taken to remedy any flaws or failures. Instead, the Review is exactly what its title says—it is a post-event review detailing an investigation into what might have gone wrong or right. And post-event reviews are not inadmissible under Rule 407.

For the same reasons, the Congressional Findings—detailed in § 102(a) of the Act— are likewise not subsequent remedial measures as defined by Rule 407. The Congressional Findings are just that—findings by Congress. They do not involve any curative *action* taken to remedy any flaws or failures. Moreover, "Rule 407 only applies to a <u>defendant's</u> voluntary actions[.]" *Mehojah v. Drummond*, *supra* at 1215 (internal citation and quotation marks omitted) (emphasis added). So, any findings or actions taken by Congress—and not the Defendants-Appellants—are not subject to Rule 407.

For these reasons, neither the Forest Service's Review nor the Congressional Findings are subsequent remedial measures and thus neither were barred from consideration by Rule 407.

**(5.) Negligence, Nuisance and Trespass Causes of Action Provide Relief for Noneconomic Damages.**

The District Court's survey of New Mexico law correctly identifies negligence, nuisance, trespass and generally torts (to include strict liability) as causes of action that provide for non-economic damages such as discomfort, annoyance, and pain and suffering. *See*, *Sena v. New Mexico State Police*, 1995-NMCA-003, ¶ 29, 119 N.M. 471, 477-78, 892 P.2d 604, 611. "[W]e think it is clear that New Mexico permits proof of nonpecuniary damages resulting from the loss of enjoyment of life in tort actions involving permanent injuries." (Citing *Romero v. Byers*, 1994-NMSC-031, ¶ 17, 117 N.M. 422, 428, 872 P.2d 840, 846; and *Hoskie v. United States*, 666 F.2d 1353 (10th Cir. 1981)). *See also*, *Sheraden v. Black,* 1988-NMCA-016, ¶ 18, 107 N.M. 76, 81, 752 P.2d 791 ("Pain and suffering are proper elements of damages in personal injury actions.").

The District Court predicted that the New Mexico Supreme Court would concur with the Court of Appeals in *Sheraden* and *Sena*. App. 2.248-49.

**Negligence**. The duty of reasonable care for common law negligence in New Mexico is a question of law. *See*, *Herrera v. Quality Pontiac*, 2003-NMSC-018,¶6, 134 N.M. 43, 48, 73 P.3d 181, 186 (whether a duty exists is a question of law for the courts to decide.). As the risk of danger and harm increases, the conduct that amounts to a breach of duty of care also increases. *See*, *Clay v. Ferrellgas, Inc*., 1994-NMSC-080, ¶13,118 N.M. 266, 269, 881 P.2d 11, 14. The Forest Service had a heightened duty of care because of the inherent risk of danger and harm to neighboring property owners. New Mexico Civil Uniform Jury Instructions provide damage instructions for pain and suffering and loss of enjoyment of life for personal injury and property damages, *see* NMRA 13-1807-Pain and suffering, 13-1807A-Loss of enjoyment of life.

**Nuisance.** The New Mexico Supreme Court in *Aguayo v. Village of Chama*, 1969-NMSC-005, ¶4 , 79 N.M. 729, 731, 449 P.2d 331, 333, allowed recovery of special damages under a cause of action for "nuisance in fact" (as opposed to a nuisance *per se*) for "discomfort and annoyance" that may result from noxious fumes on an adjacent property owners property next to a sewage treatment plant. In *Aguayo*,

plaintiffs sought damages for loss of use of the property located 220 feet from a newly installed City of Chama sewage plant allegedly emanating noxious odors. The New Mexico Supreme Court followed the "majority rule respecting the right of property owners to recover damages for discomfort, annoyance, etc." *Id.* at ¶7, and expressly found that the calculation of damages was within the sound discretion of the fact finder. The Supreme Court articulated: "[n]o precise rule for ascertaining such special damages can be given. It is for the trier of the facts to determine the amount of damages, in view of the discomfort or annoyance to which the plaintiffs have been subjected." *Aguayo* at ¶8.

Similarly, in *Padilla v. Lawrence*, 1984-NMCA-064, 101 N.M. 556, 685 P.2d 964, *cert. denied* July 19, 1984, property owners filed suit against a manure processing plant and its owner requesting, *inter alia*, money damages based upon theories of trespass, public nuisance, private nuisance, negligence, and personal injury. The New Mexico Court of Appeals, citing *Aguayo*, upheld a property owner's right to recover, under the theory of private nuisance, noneconomic property damages for annoyance and discomfort. *Id.* at ¶16. In addition, the Court opined that a land occupant may recover special damages

whether the nuisance is temporary or permanent. *Id*. *Padilla* declined to require a "mathematical certainty" in proving noneconomic damages as FEMA complains. "While a mathematical certainty as to the amount of damages need not be demonstrated, a plaintiff in a nuisance action is nevertheless required to meet a measure of proof sufficient to enable a trier of fact to fix the amount." *Id*. at ¶19.

**Trespass.** *Padilla* also confirmed that a trespass is a direct infringement of another's right of possession. *Id.* at ¶26. A property owner may recover in trespass for the "entrance onto the property of blowing particulate matter . . . [and] the matter settled upon the plaintiffs' property," *Id.,* such as smoke and burned particulate from the Hermit's Peak Wildfire settling on one's property. The District Court also defined the distinction between a trespass and private nuisance. App. 4.233, fn. 24. Similar to *Aguayo's* finding of noneconomic damage for nuisance, *Padilla* embraces noneconomic damages for trespass, to include nominal damages for annoyance and discomfort. *Padilla* at ¶16.

The District Court predicted that New Mexico would follow the Restatement to allow the Appellees to recover for noneconomic damages resulting from trespass. In *In Re: Gold King Mine Release in San Juan*

*County, Colorado, On August 5, 2015*, 2022 WL 3279341, at *2 (D.N.M. August 11, 2022), the Hon. William P. Johnson notes that Colorado state courts permit recovery for annoyance and discomfort damages on nuisance and trespass claims, although those cases involve only Colorado state substantive law and not New Mexico State substantive law. *See, Gold King Mine*, 2022 WL 3279341 at *2 , citing *Calvaresi v. National Development Co.,* 772 P.2d 640 (Colo. App. 1988)(stating that, in an action for tortious injury to land, the plaintiffs are entitled to put on evidence to establish discomfort, annoyance, physical illness, and loss of use and enjoyment of property). App. 2.245-46.

Because New Mexico courts look to the Restatement of Torts to develop New Mexico law, the District Court predicted that the Restatement of Torts (Second), which describes a "Trespass on Land" as "invasions of the interest in the exclusive possession of land and its physical condition." Restatement (Second) Torts, Chapter 7, §§ 157-166. The Restatement classifies three different "Trespass[es] on Land": (i) intentional entries on land, see Restatement (Second) Torts § 158; (ii) reckless or negligent entries on land and those resulting from extra hazardous activities, see Restatement (Second) Torts § 165; and (iii)

accidental entries on land, see Restatement (Second) Torts § 166. App. 2.242-43.

Judge Browning predicted that noneconomic damage to property would eclipse the "narrow" ruling in the New Mexico Court of Appeals case *Castillo v. City of Las Vegas*, 2008-NMCA-141, ¶¶1-2, 145 N.M. 205, 206, 195 P.2d 870, 871. Judge Browning distinguished *Castillo,* finding that the New Mexico Supreme Court would not follow its narrow ruling denying an award of emotional distress from a public sewer system backup that damaged the plaintiffs' home. MOO, 12/17/24, App. 2.238. (*Certiorari* was not sought to the New Mexico Supreme Court.) The Court of Appeals failed to mention or apply, as it must, the New Mexico Supreme Court's decision in *Aguayo*. Nor did *Castillo* acknowledge *Padilla*. *See*, *Castillo* at ¶¶21-33. The plaintiffs apparently made no claim for trespass or private nuisance, and none was referenced in the opinion. The claimants claimed only for loss of consortium, and negligent and/or intentional infliction of emotional distress. *Id.* The *Castillo* Court rendered its opinion without any case support, citing the "narrow circumstances" of its opinion, and

concluding "plaintiff may not recover for emotional distress based solely on a claim for negligent damages to property." *Id.* at ¶ 21.

In an apparent contradiction, *Castillo* does reference noneconomic damages for emotional distress, *citing Williams v. Stewart,* 2005–NMCA–061, ¶ 38, 137 N.M. 420, 112 P.3d 281; *Baldonado v. El Paso Natural Gas Co.,* 2008–NMSC–005, ¶ 27, 143 N.M. 288, 176 P.3d 277 (intentional infliction of emotional distress); and *Fernandez v. Walgreen Hastings Co.,* 1998–NMSC–039, ¶ 6, 126 N.M. 263, 968 P.2d 774 (negligent infliction of emotional distress). Finally, the District Court expressed some dismay that the New Mexico Court of Appeals "ignore[d] that recovery for discomfort and annoyance can be in addition to the harm to [the] plaintiffs' proprietary interests," as cited in the Restatement (Second Torts, §929(1), and that "damages for discomfort or annoyance is within the sound discretion of the trier of facts." MOO, 12/17/24, App. 2.238, citing *Aguayo*, 1969-NMCS-005, ¶8, 79 N.M. at 732, 449 P.2d at 334.

As a matter of law, the District Court's survey of New Mexico law accurately determined that nuisance, as a non-trespassory invasion of property (i.e. smoke), and trespass, which is a direct invasion or

infringement of another's right of possession, both allow for the recovery of annoyance, discomfort and pain and suffering. *See*, *Aguayo* v. *Village of Chama*, *supra*, ¶4-8, and *Padilla v Lawrence*, *supra* ¶ 9.

For these reasons, the District Court properly concluded that the Hermit's Peak fire was both a nuisance and a trespass because the Forest Service conduct was both "negligent or reckless conduct, or ultrahazardous activity." (Emphasis added.) App. 2.244. The Court explained that the nature of the conduct removed the need to establish intent, because the nature of the conduct created an unreasonable risk of harm or injury resulting in the invasion of a possessory interest in land where the Forest Service lost control of a prescribed burn that turned into a wildfire (the Hermit's Peak Wildfire), and also did not properly manage the pile burns from January until April 2022, when the fire reemerged (the Calf Canyon Wildfire). The District Court concluded that because of the same conduct, the Forest Service caused a nuisance and was negligent. The Court noted that the Chief of the Forest Service commissioned a ninety-day review of its prescribed burn policies acknowledging abnormally dangerous and extra hazardous activities which constituted unreasonable risks similar to that of

explosives. *Id.* citing Louis R. Frumer & Melvin I. Friedman, *Personal Injury: Actions, Defenses, Damages* § 138.05 (2024). See Restatement (Second) of Torts § 165, comment b.

**(6.) New Mexico Strict Liability for Inherently Dangerous Activities Provides Relief for Noneconomic Damages.**

Strict liability is an important component of the District Court's survey of the New Mexico law of noneconomic damages in the Act. First, inherently dangerous or ultra-hazardous activities can be a trigger for determining that the Forest Service conduct amounted to a trespass or nuisance or negligence, making available noneconomic damages. Second and separately, an abnormally dangerous or ultra-hazardous activity can lead to a separate tort of strict liability which allows recovery for noneconomic damages, especially when the inherently dangerous work, either the work activity itself or the object sought to be attained, is very likely to cause substantial harm if a reasonable precaution against the peculiar risk or special danger is not taken. *See*, *Saiz v Belen School District,*1992-NMSC-018, ¶ 22, 113 N.M. 387, 397, 827 P.2d 102, 112)(the electrocution of a schoolboy causing personal injury and wrongful death); *Schwartzman, Inc. v.*

*Atchison*, *Topeka & Santa Fe Ry. Co*., 842 F. Supp. 475 (D.N.M. 1993)(the release of hazardous chemicals from storage of railroad ties causing damage to property).

The New Mexico Supreme Court in *Saiz* embraced strict liability for inherently dangerous activities. In *Saiz*, a wrongful death action was brought for the electrocution of a boy by high voltage lighting system at a high school football game, seeking damages for personal injury and wrongful death (i.e., pain, suffering and loss of the enjoyment of life). In *Saiz,* the New Mexico Supreme Court set out the basic strict liability elements for strict liability. They are: [1] To recover for an injury from a peculiar risk or special danger, …or that the hazard could not be eliminated by the exercise of reasonable care. [2] [W]ork is inherently or intrinsically dangerous because the commission of the work, either the work activity itself or the object sought to be attained, is very likely to cause harm if a reasonable precaution against the peculiar risk or special danger is not taken. [3] The hazard must be substantial. That is, there must exist a strong probability that harm will result in the absence of reasonable precautions. *Saiz* at ¶¶ 18-19.

Subsequent to *Saiz,* the U.S. District Court in *Schwartzman, Inc. v. Atchison*, *Topeka & Santa Fe Ry. Co*., 842 F. Supp. 475, 478 (D.N.M. 1993)(Burciaga, C.J.), predicted the New Mexico Supreme Court would follow the Restatement (Second) of Torts §§519-520, invoking the doctrine of strict liability for abnormally dangerous activities, which include:

> (1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.
>
> (2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.

*Restatement (Second) of Torts* § 519. *See also*, The *Restatement (Third) of Torts* provides a straightforward definition of abnormally dangerous activity. *Restatement (Third) of Torts*: Liab. for Physical & Emotional Harm § 20 (Am. L. Inst. 2010)("Restatement (Third) § 20").

In *Schwartzman, supra* at 478, the district court applied *Saiz* strict liability to treatment and storage of wooden railroad ties that were improperly stored and disposal of chemical waste which contaminated the groundwater and rendered the plaintiff's property unmarketable. The federal district court distinguished *Rodgers v. City*

*of Loving*, 1997-NMCA-132, 91 N.M. 306, 307, 573 P.2d 240, 241, observing that in that case the New Mexico Court of Appeals had refused to characterize a small property burning dead leaves and grass as abnormally dangerous as it stated, "[e]ven if we were to apply the rule of strict liability . . . 'the instant situation does not present one of the factors necessary for the imposition: 'inability to eliminate the risk by the exercise of reasonable care." *Schwartzman, supra* at 477, citing *City of Loving* at ¶ 7.

The Hermit's Peak Wildfire, on the other hand, is an entirely different situation. The community had experienced years of drought and the Chief of the Forest Service acknowledged that because of climate change, extreme weather conditions, and extended periods of drought, prescribed burns under these conditions constituted an inherently dangerous risk to life, property and natural resources.

Relying on *Schwartzman* and New Mexico Supreme Court case law, Judge Browning, in an extensive survey of the law, predicted that the New Mexico Supreme Court would follow the Restatement (Third) of Torts, referring to its commentary illustrating that a controlled burn is similar to the prescribed burns started in the Hermit's Peak/Calf

Canyon Fire context. Judge Browning found that prescribed burns, even when following the utmost care under prescribed fire policy and safety protocols, pose ultrahazardous risks similar to blasting, because the risk of wildfire cannot be eliminated even "by the exercise of utmost care." MOO 07/18/25, App. 4.264-66. Judge Browning correctly likened the escaped wildfire burning 340,000 acres as similar to blasting and dissimilar to a small grass fire. *Id.; see*, *Thigpen v. Skousen & Hise*, 1958-NMSC-084, 64 N.M. 290, 327 P.2d 802.

The District Court's prediction that prescribed burn activities are inherently dangerous triggers recovery for noneconomic damages under negligence, trespass, nuisance, and strict liability under the Act.

**(7.) The NM Prescribed Burn Act Does Not Immunize FEMA From New Mexico Common Law Tort Liability.**

The New Mexico Prescribed Burn Act, N.M.S.A. 1978, §§68-5-1, *et seq*. (cited therein as the "Burn Act") was intended to apply to private landowners under the narrow confines of a predetermined burn area. FEMA makes the overbroad argument that the New Mexico Legislature has determined that prescribed burns are in the public interest, and through a leap of logic, are not "abnormally dangerous" activities.

The definition of "prescribed burns" is expressly limited to and defined as a "controlled application of fire." NMSA 1978 §68-5-2(F). The Burn Act is, therefore, limited to "private landowners" who burn "on the landowners' property" and the burn is "confined to a predetermined area." § 68-5-3(B). Prescribed burns for private landowners under limited conditions have nothing to do with an uncontrolled wildfire that burns for four consecutive months and torches over 340,000 acres, destroying homes and private property and displacing thousands of residents. The Burn Act gives the Forest Service no relief from New Mexico law for tort damages, including nuisance.

The only issue in the Burn Act is the strange statement: "prescribed burning is considered in the public interest and not a public or private nuisance." NMSA 1978 §68-5-3(A). The definition of "prescribed burn" under the Burn Act, §68-5-2, is narrow in scope to controlled burns limited to a predetermined area, as compared to wildfires that are unconfined and dangerously out of control. The Burn Act, §68-5-2, highlights the difference between a wildfire and "the <u>controlled application of fire</u> to existing vegetative fuels through pile

burning or burning of vegetation over predefined areas . . ." *Id.* (underlining added.).

The District Court distinguishes the Hermit's Peak wildfire from a prescribed burn that is controlled. MOO 7/18/2025, App. 4.259-60. A wildfire is clearly not a controlled application of fire and is not confined to a predefined area. The Hermit's Peak wildfire is entirely outside the scope of the Burn Act and is abnormally dangerous. The Legislature's intent behind a limited reference for the term "nuisance" in §68-5-3(A) and the expansive expression of civil liability for negligence in §68-5-4, protects landowners from nonpossessory smoke claims that are classified as a nuisance when the prescribed burn is contained. When the prescribed burn is not contained and causes personal injury and property damage, the Burn Act imposes stiff civil liability. §68-5-4.

The Burn Act expressly provides that a private landowner is "liable for any damages to property or for personal injury by a prescribed burn, including the reignition or a previously contained prescribed burn, if that person was negligent in starting, controlling or extinguishing the prescribed burn." NMSA §68-5-4 (A) and (B) - Civil liability (emphasis added). Indeed, an 'uncontrolled' fire under Section

68-5-4 expressly establishes liability for damage to property or personal injury. While the Burn Act expressly states that a "private landowner" can be liable for negligence, the Burn Act does not say a private landowner is immune from any other tort. Section 68-5-3(A) conflicts with §68-5-4 (A) and (B). Section 68-5-3 grants no immunity to any person or entity but only mentions that a prescribed burn is not a private nuisance (if the prescribed burn is contained within its predetermined boundaries). To avoid an ambiguity and read both sections in harmony, the term "nuisance" liability in §68-5-3(A) is limited to smoke nuisance caused by a contained prescribed burn that is not a wildfire. In juxtaposition to §68-6-3(A), Sections 68-5-4(A) and (B) expand civil liability to broadly provide liability for wildfires negligently started, out-of-control, and not extinguished within the prescribed burn parameters.

The only logical inference is that private landowners, who maintain their prescribed burns within the designated burn perimeter, are not liable for smoke nuisance when the burn is contained and they have followed the details of the Burn Act. See, §§68-5-5 to 8.

## IV. BECAUSE THE DISTRICT COURT COMPELS FEMA TO AWARD NONECONOMIC DAMAGES ONLY WHERE APPROPRIATE, THERE IS NO NEED TO REMAND TO FEMA FOR FURTHER DETERMINATION.

There is no reason to remand the District Court's order to FEMA for further determination compelling the award of noneconomic damages because the District Court's order only compels the award of noneconomic damages where appropriate. The Court's order clearly states the Court compels FEMA to award noneconomic damages under the Hermit's Peak Act "with the understanding that FEMA must still conduct its usual process to determine whether each individual claimant should receive noneconomic damages." Further, "the Court compels FEMA to allow noneconomic damage awards, not to pay noneconomic damages awards for unsubstantiated claims." MOO 7/18/2025, App. 4.139.

## CONCLUSION

Appellees respectfully request that the Tenth Circuit Court uphold in full the District Court's determination that FEMA's rule precluding recovery of noneconomic damages is arbitrary and capricious in violation of the APA, 5 U.S.C. §§ 706(1) and 706(2), and must be set

aside. In addition, this Court must affirm the District Court's holding FEMA's failure to award noneconomic damages when appropriate is action "unlawful withheld" under 5 U.S.C. §706(1), compelling FEMA to do so.

Lands and Paynter request such other and further relief as the Court deems appropriate.

Respectfully submitted,

Dated: May 2, 2026

*s/ Mark C. Dow*
B&D Law Offices, PC
*s/ Maureen S. Moore*
B&D Law Offices, PC
P.O. Box 30684
Albuquerque, NM 87190
(505) 883-3191
mcd@bdsfirm.com
msm@bdsfirm.com

*s/ Thomas Tosdal*
Thomas Tosdal
TOSDAL LAW FIRM
P.O. Box 109
Ovando, MT 59854
(406) 793-1949
tom@tosdallaw.com

## REQUEST FOR EXPEDITED ORAL ARGUMENT

Appellees believe that oral argument would be of assistance to this Court and respectfully request oral argument.

Appellees respectfully request that oral argument be expedited pursuant to Congress's finding that the purpose of the Hermit's Peak Fire Assistance Act was "to provide for the expeditious consideration and settlement of claims" for injuries resulting from the Fire (Act, § 102(b)(2) and four years have elapsed since the Fire.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,950 words. This brief also complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally-spaced typeface.

*s/ Maureen S. Moore*
Maureen S. Moore

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that (1) all required privacy redactions have been made; (2) any required paper copies to be submitted to the Court are exact copies of the version filed electronically; and (3) that the electronic submission was scanned for viruses and was found to be virus-free.

*s/ Maureen S. Moore*
Maureen S. Moore

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2026, I electronically filed the foregoing Brief for Appellees with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system, which will notification of such filing to all parties of record.

*s/ Maureen S. Moore*
Maureen S. Moore