**Case Nos. 25-2102 & 25-2103**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

---

TOBIN DOLAN AND MARIANNA LANDS et al.,

*Plaintiffs-Appellees*,

v.

FEDERAL EMERGENCY MANAGEMENT AGENCY et al.,

*Defendants-Appellants*.

Consolidated Appeals from the
United States District Court for the District of New Mexico,
the Honorable James O. Browning,
Case Nos. 1:23-CV-00908-JB-JFR & 1:23-CV-00869-JB-JFR

---

# BRIEF OF THE STATE OF NEW MEXICO AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS AND AFFIRMANCE

---

RAÚL TORREZ
*Attorney General*
Aletheia V.P. Allen
*Solicitor General*
201 Third St. NW, Suite 300
Albuquerque, NM 87102

Ellen Venegas
*Senior Solicitor General*
Daniel Ahrens
*Assistant Solicitor General*
408 Galisteo St.
Santa Fe, NM 87501
(505) 269-0686

*Counsel for Amicus Curiae the State of New Mexico*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..................................................... iii

INTEREST OF AMICUS CURIAE ..................................................... 1

ARGUMENT ..................................................... 2

CONCLUSION ..................................................... 14

STATEMENT OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS ..................................................... 15

CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS ..................................................... 16

CERTIFICATE OF SERVICE ..................................................... 17

# TABLE OF AUTHORITIES

## Cases

*Aguayo v. Village of Chama*,
1969-NMSC-005, 79 N.M. 729, 449 P.2d 331 .......... 5

*Castillo v. City of Las Vegas*,
2008-NMCA-141, 145 N.M. 205, 195 P.3d 870 .......... 7

*Christian v. Atl. Richfield Co.*,
2015 MT 255, 380 Mont. 495, 358 P.3d 131 .......... 6

*Fitzgerald v. Valdez*,
1967-NMSC-088, 77 N.M. 769, 427 P.2d 655 .......... 9

*Hanagan v. Bd. of County Comm'rs*,
1958-NMSC-053, 64 N.M. 103, 325 P.2d 282 .......... 4

*Illinois v. FEMA*,
801 F. Supp. 3d 75 (D.R.I. 2025) .......... 1

*Kaywal, Inc. v. Avangrid Renewables, LLC*,
2021-NMCA-037, 495 P.3d 550 .......... 5, 6

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) .......... 12, 13

*Marbury v. Madison*,
5 U.S. (1 Cranch) 137 (1803) .......... 13

*Muckleroy v. Muckleroy*,
1972-NMSC-051, 84 N.M. 14, 498 P.2d 1357 .......... 4

*Padilla v. Lawrence*,
1984-NMCA-064, 101 N.M. 556, 685 P.2d 964 .......... 5

*Rael v. F & S Co.*,
1979-NMCA-128, 94 N.M. 507, 612 P.2d 1318 .......... 4

*Ramos v. Bondi*,
155 F.4th 1154 (10th Cir. 2025) .......... 13

*Rodgers v. City of Loving*,
1977-NMCA-132, 91 N.M. 306, 573 P.2d 240 .......... 12

*Zapata-Chacon v. Garland*,
51 F.4th 1191 (10th Cir. 2022) .......... 13

**Statutes**

Hermit's Peak/Calf Canyon Fire Assistance Act,
Pub. L. 117-180, 136 Stat. 2168 (2022) .......... 2, 3, 9, 10

N.M. Stat. Ann. § 68-5-2 .......... 10, 12

N.M. Stat. Ann. § 68-5-3 (2021) (amended 2023) .......... 9

N.M. Stat. Ann. § 68-5-4 .......... 9, 12

N.M. Stat. Ann. § 8-5-2(J) (1975) .......... 1, 4

**Other Authorities**

Fed. R. App. P. 29 .......... 1

**Regulations**

44 C.F.R. § 296.21 .......... 3

**Jury Instructions**

7 American Law of Torts § 23:37 .......... 6

Carol Hardy Vincent, Laura A. Hanson & Lucas F. Bermejo, Cong. Rsch. Serv., R42346, Federal Land Ownership: Overview and Data (2020) .......... 11

H. Mem'l 39, 56th Leg., 1st Reg. Sess. (N.M. 2023) .......... 2

H. Mem'l 62, 57th Leg., 1st Reg. Sess. (N.M. 2025) .......... passim

Restatement (Second) of Torts § 929 .......... 6

Restatement (Third) of Torts: Phys. & Emot. Harm § 20 (2010) .......... 11, 12

## INTEREST OF AMICUS CURIAE

The State of New Mexico files this brief in support of Plaintiffs and affirmance of the district court's judgment. The Attorney General is authorized by statute to appear before federal courts "to represent and to be heard on behalf of the state when, in his judgment, the public interest of the state requires such action[,]" N.M. Stat. Ann. § 8-5-2(J), and the State is authorized to file an amicus brief without leave of court pursuant to Federal Rule of Appellate Procedure 29(a)(2).

Plaintiffs' recovery from the Hermit's Peak/Calf Canyon Fire turns on this Court's interpretation of New Mexico law. New Mexico has an interest in the accurate and consistent interpretation of its state laws by FEMA and this Court. And our Legislature has directed that New Mexicans should be entitled to nothing less than "full compensation from the federal government" for their losses. H. Mem'l 62, 57th Leg., 1st Reg. Sess. (N.M. 2025); *see also Illinois v. FEMA*, 801 F. Supp. 3d 75, 98 (D.R.I. 2025) ("[P]rotecting access to disaster and emergency relief is squarely aligned with the public interest.").

## ARGUMENT

In 2022, the United States Forest Service lit two fires that merged to form the largest wildfire in New Mexico's history—the Hermit Peak/Calf's Canyon wildfire. This wildfire was a direct result of the Forest Service's decision to begin a prescribed burn that "exceeded the containment capabilities of the Forest Service" which then merged with a Forest Service pile burn that "re-emerg[ed]" from containment. Hermit's Peak/Calf Canyon Fire Assistance (Hermit's Peak) Act, Pub. L. 117-180 § 102(a)(3), (4), 136 Stat. 2168 (2022). The fire completely destroyed homes, ranches, and businesses, leaving a 341,471-acre scar etched into New Mexico's landscape and psyche.

The wildfire wiped out more than just property values. Residents of Colfax, Mora, and San Miguel counties have lived on their lands for generations and are critical threads of our state's cultural fabric. This includes places like Las Vegas, a land grant founded in 1835 that carries on centuries-old agricultural practices with the "courage and resolve" of its residents. H. Mem'l 39, 56th Leg., 1st Reg. Sess. (N.M. 2023). The wildfire's wholesale devastation of the area's "homes, ranches, businesses, forests and recreation areas" "displace[d]" residents from

rural communities, inflicted "emotional trauma," and led to "the loss of cultural identity and traditions." N.M. H. Mem'l 62. Permitting recovery of only economic damages prioritizes the losses of properties with high commercial value, while discounting the claims of rural residents whose losses are not as easily captured in an appraisal.

If these claimants experienced the same losses at the hands of a private party in New Mexico, state law would compensate them for *both* economic damages *and* noneconomic damages. Congress intended the same for victims of the Hermit's Peak/Calf Canyon fire—it accepted responsibility for the fire and, in allocating billions of dollars of disaster assistance, allowed victims to recover damages as they would under New Mexico law. Hermit's Peak Act §§ 102(a)(8), (b), 104(c)(2). But FEMA decided to bar the recovery of noneconomic damages, and in so doing, adopted a rule that is contrary to both Congress's intent and New Mexico law. 44 C.F.R. § 296.21(a). The Final Rule is arbitrary and capricious and unlawfully withholds New Mexicans a benefit guaranteed by law.

The State agrees that the Hermit's Peak Act permits the recovery of noneconomic damages to the full extent permitted by New Mexico law.

App.2.128–31. The State files this brief to provide the Court additional guidance on the questions of New Mexico law in this case.

*First*, New Mexico law provides for noneconomic damages in private nuisance and trespass claims.[1] Two years ago, this office issued its official opinion that state law permits recovery for noneconomic damages under theories of nuisance and trespass.[2] App.1.163–67. As explained in that opinion, nuisance and trespass both represent injuries to a plaintiff's interests in their land. App.1.164; *see Muckleroy v. Muckleroy,* 1972-NMSC-051, ¶ 5, 84 N.M. 14, 498 P.2d 1357. Both interfere with property rights including possession, use, and enjoyment, and both permit recovery of noneconomic damages. App.1.164–66.

Noneconomic damages are available for private nuisance claims under New Mexico law. App.1.165. In *Aguayo v. Village of Chama*, the New Mexico Supreme Court held that in a nuisance case, residents

---

[1] No party appears to dispute that noneconomic damages would be available in personal injury claims under New Mexico law. *Rael v. F & S Co.*, 1979-NMCA-128, ¶ 11, 94 N.M. 507, 612 P.2d 1318.

[2] Under New Mexico law, the Attorney General shall "give his opinion in writing upon any question of law submitted to him" by certain public officials. N.M. Stat. Ann. § 8-5-2(D). New Mexico courts have considered Attorney General opinions to be persuasive authority. *Hanagan v. Bd. of County Comm'rs*, 1958-NMSC-053, ¶ 9, 64 N.M. 103, 325 P.2d 282.

affected by the odor of a sewage treatment plant could recover for noneconomic damages like "annoyance and discomfort." 1969-NMSC-005, ¶ 8, 79 N.M. 729, 449 P.2d 331. The Court of Appeals affirmed *Aguayo*'s continued relevance decades later, explaining that "a plaintiff in a private nuisance action may seek compensation for interference with personal comfort as well as for diminution in property value." *Padilla v. Lawrence*, 1984-NMCA-064, ¶ 16, 101 N.M. 556, 685 P.2d 964.

Noneconomic damages are also available for trespass under New Mexico law. FEMA attempts to escape liability for noneconomic damages from trespass claims, arguing that New Mexico law only permits economic damages for trespass claims. That is not our law. New Mexico courts characterize private nuisance and trespass claims as two of a kind, both injure an owner's "use and enjoyment of land," but are distinguished only by the type of interference. *Kaywal, Inc. v. Avangrid Renewables, LLC*, 2021-NMCA-037, ¶ 42, 495 P.3d 550. Because of this, while New Mexico courts have not explicitly stated that noneconomic damages are available in trespass actions, it is the opinion of this office that New Mexico courts would follow the Restatement and find noneconomic damages available. App.1.165 (first citing *Christian v. Atl. Richfield Co.*,

2015 MT 255, ¶ 46, 380 Mont. 495, 358 P.3d 131; then citing Restatement (Second) of Torts § 929(1)(c); and citing 7 American Law of Torts § 23:37).

FEMA argues that noneconomic damages are only available for private nuisance, not trespass, because nuisance is an action protecting a landowner's right to use and enjoy their land, and noneconomic damages represent compensation for a loss of use and enjoyment. Appellant's Opening Brief (AOB) at 58–59. FEMA describes this argument as "commonsense." *Id.* at 58. It is not. The use and enjoyment of land can be injured regardless of whether the interference is trespassory or non-trespassory. Again, New Mexico courts have explained that *both* private nuisance and trespass are actions for "tortious interference with one's use and enjoyment of land." *Kaywal*, 2021-NMCA-037, ¶ 42. If anything, "common sense" instructs that a landowner injured by the trespass of a fire burning their property to the ground has suffered a greater injury to the use and enjoyment of their land than one injured by the noxious fumes of the fire alone.

One final point on the availability of noneconomic damages. In its opinion, the Attorney General addressed the availability of emotional distress damages, a limited subset of noneconomic damages distinct from

annoyance and discomfort damages. The opinion explained that our Court of Appeals, in the mine-run case, *e.g.*, a flooded basement, held a plaintiff cannot recover emotional distress damages based solely on a claim for negligent damage to property. App.1.166 (citing *Castillo v. City of Las Vegas*, 2008-NMCA-141, ¶ 21, 145 N.M. 205, 195 P.3d 870). This case should not be considered limiting here. Although our office noted that emotional distress damages have generally only been permitted in limited circumstances, the opinion was issued without reference to wildfire or the Hermit's Peak/Calf Canyon fire. In light of the wildfire's complete and total devastation of over 900 structures, the evacuation of 15,000 residents, App.2.80, and our Legislature's statements that claimants are "entitled to full compensation" for their "losses" to include "displacement, emotional trauma, and the loss of cultural identity and traditions," N.M. H. Mem'l 62, there is no doubt that our courts would find this case is one of the "narrow" circumstances in which emotional distress damages would be available. *Castillo*, 2008-NMCA-141, ¶ 21. This fire was not a flooded basement.

*Second*, if the Court is inclined to assess the federal government's liability for private nuisance or trespass under New Mexico law,[3] a prescribed burn that transforms into a wildfire can form the basis for a state-law private nuisance or trespass claim.

The Congressional findings in the Hermit's Peak Act compel a finding that the Forest Service was negligent per se. Under New Mexico's Prescribed Burn Act, a private landowner's right to conduct a prescribed burn extends only so far as the landowner uses "appropriate precautionary measures" to include "the use of sufficient personnel and equipment" and "appropriate prescribed burn techniques that cause the

---

[3] The State does not dive deeply into the question of whether the Hermit's Peak Act presumes liability, or if the Court must conduct an analysis of state law in the first instance. App.4.92–101. The State's primary concern is that New Mexicans receive the damages to which they are entitled under state law.

However, the State is concerned by FEMA's arguments that it cannot be made liable under state-law theories of negligence, recklessness, or strict liability for its role in the Hermit's Peak/Calf Canyon fire. FEMA's liability is an issue for *both* economic and noneconomic damages, not just noneconomic damages. If FEMA must pay out economic damages on a state-law tort theory as the Hermit's Peak Act requires, FEMA must also pay out the noneconomic damages available for that same tort. App.4.93. There is no logical consistency between FEMA admitting it is compelled to pay economic damages under tort-based theories (which FEMA seems to concede, *id.*) and not paying noneconomic damages for those same tort claims. *See also* Appellees' Answering Brief (Dolan) at 24.

fire to be confined to a predetermined area." N.M. Stat. Ann. § 68-5-3(A) (2021) (amended 2023). Congress found that the Forest Service lacked sufficient personnel to manage the burn, Hermit's Peak Act § 102(a)(2), allowed the burn to spread beyond its intended area, *id.*, and conducted the burn in dangerous wind and drought conditions, *id.* § 102(a)(1). The Prescribed Burn Act was passed for the benefit of adjoining landowners and residents, so as to reduce the risk of both wildfires and prescribed burns. *Fitzgerald v. Valdez*, 1967-NMSC-088, ¶ 13, 77 N.M. 769, 427 P.2d 655 (violation of statute passed for benefit of injured party constitutes negligence per se); *see, e.g.*, N.M. Stat. Ann. § 68-5-4. Accordingly, because the Congressional findings concede a violation of the Prescribed Burn Act, the Forest Service was negligent.

The Prescribed Burn Act does not compel a different result. FEMA argues that the Prescribed Burn Act's statement that "[p]rescribed burning is considered in the public interest and not a public or private nuisance" precludes a finding of federal liability on a private nuisance theory.[4] N.M. Stat. Ann. § 68-5-3(A) (2021) (amended 2023). But the Prescribed Burn Act does not insulate the Forest Service's conduct.

[4] There is, however, no reference to trespass in the Prescribed Burn Act.

Under the Prescribed Burn Act, a "prescribed burn" is a "controlled" burn conducted on "predefined areas under appropriate weather and environmental conditions." N.M. Stat. Ann. § 68-5-2(F). The Hermit's Peak Act makes clear the Forest Service's burns exceeded the predefined area, and were conducted under "erratic wind[]" and "severe drought" conditions. Hermit's Peak Act § 102(a)(1)–(5). The Hermit's Peak/Calf Canyon fire was not, then, a "prescribed burn."

The Prescribed Burn Act's statement about private nuisance must be read in context. The Prescribed Burn Act was enacted to regulate private landowners conducting small burns on their land, and its statement on private nuisance was intended to limit nuisance actions about non-trespassory invasions, like smoke, from adjoining landowners. The federal government is not simply a private landowner clearing its property—it is the single largest landowner in the State, owning nearly a third of all land in New Mexico, or 24 million acres, 9 million of which is managed by the Forest Service. Carol Hardy Vincent, Laura A. Hanson & Lucas F. Bermejo, Cong. Rsch. Serv., R42346, Federal Land

Ownership: Overview and Data 10, 17 (2020).[5] The Prescribed Burn Act's statement that prescribed burns are in the public interest cannot be stretched to mean that the largest wildfire in state history was in the public interest, especially in light of legislative enactments to the contrary. *See* N.M. H. Mem'l 62.

In addition to supporting a theory of per se negligence, the Prescribed Burn Act also supports the idea that prescribed burns conducted under dangerous weather conditions, like erratic winds and persistent drought, are abnormally dangerous activities, and strict liability applies. App.2.134–35. Tort law distinguishes between risks which a defendant cannot control, for example, erratic winds and drought, and those within a defendant's control, for example, establishing a fire break. The first set can render an otherwise manageable activity abnormally dangerous, the second are only relevant in considering the standard of care in a negligence claim. *See* Restatement (Third) of Torts: Phys. & Emot. Harm § 20 (2010) (prescribed burns in windy conditions are abnormally dangerous). The

[5] The State could not have written the Prescribed Burn Act to regulate the Forest Service's burning if it wanted to.

Prescribed Burn Act's application is in accord with the Restatement—only prescribed burns conducted under "appropriate weather and environmental conditions" are subject to the statutory negligence standard, that is, those that can be contained with reasonable care; other burns are not and are abnormally dangerous activities. N.M. Stat. Ann. §§ 68-5-2(F), 68-5-4.[6] The federal government admitted liability in the Hermit's Peak Act; FEMA cannot escape Congress's concessions.

*Third*, FEMA has no "special competence" to adjudicate New Mexico's tort law. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400–01 (2024). FEMA argues that if the Court interprets the Hermit's Peak Act to permit recovery to the full extent permitted by New Mexico law, this Court should remand the issue for FEMA to determine whether state law permits recovery of noneconomic damages in nuisance and trespass claims in the first instance.

---

[6] FEMA's citation to *Rodgers v. City of Loving*, 1977-NMCA-132, ¶ 3, 91 N.M. 306, 573 P.2d 240, is likewise inapposite for two reasons. First, *Rodgers* concerned a small fire of weeds in a town, not a large, prescribed burn in a persistently dry forest. *See also* N.M. Stat. Ann. § 68-5-2(F) (agricultural burning is not a "prescribed burn"). Second, the poster child for an "abnormally dangerous activity" in the Restatement is a prescribed burn in windy conditions. Restatement (Third) of Torts: Phys. & Emot. Harm § 20 (2010).

Remand to FEMA would be futile and delay long-needed disaster assistance to New Mexicans. This Court "can avoid a remand if it would be futile." *Zapata-Chacon v. Garland*, 51 F.4th 1191, 1196 (10th Cir. 2022). Remands are futile when "the outcome is clear as a matter of law." *Ramos v. Bondi*, 155 F.4th 1154, 1171 (10th Cir. 2025) (citation modified). Whether New Mexico law permits recovery for noneconomic damages in cases of nuisance and trespass is purely a question of law, one which this Court affords FEMA no deference. *Loper Bright*, 603 U.S. at 400–01. Interpreting the law is "emphatically the province and duty of the judicial department"—this Court is just as competent as FEMA to adjudicate what damages are available to New Mexicans. *Loper Bright*, 603 U.S. at 385 (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803)).

FEMA has already announced its legal position in this case—it argues New Mexico law does not permit recovery for noneconomic damages for nuisance and trespass claims. AOB 45–60. Four years have passed since the Hermit's Peak/Calf Canyon fire and New Mexicans are still waiting to receive necessary assistance. N.M. H. Mem'l 62. FEMA cannot further delay its statutory obligations under the Hermit's Peak Act by arrogating itself the authority to interpret New Mexico law. Time

is of the essence. This Court can—and should—affirm the district court's decision without remanding the Final Rule.

**CONCLUSION**

This Court should affirm the district court's orders on summary judgment and reconsideration.

Respectfully submitted,

RAÚL TORREZ
*Attorney General, State of New Mexico*

By: /s/ Daniel Ahrens
Ellen Venegas
*Senior Solicitor General*
Daniel Ahrens
*Assistant Solicitor General*
New Mexico Department
of Justice
408 Galisteo Street
Santa Fe, NM 87501
(505) 269-0686
evenegas@nmdoj.gov
dahrens@nmdoj.gov

Aletheia V.P. Allen
*Solicitor General*
201 Third St. NW, Suite 300
Albuquerque, NM 87102
(505) 717-3500
aallen@nmdoj.gov

*Counsel for Amicus Curiae the State of New Mexico*

## STATEMENT OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I certify that:

1) This brief complies with the type-volume requirement of Federal Rule of Appellate Procedure 29(a)(5). It contains 2,730 words, excluding the parts of the brief excluded by Federal Rule of Appellate Procedure 32(f).

2) This brief complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6). It is printed in Century Schoolbook, 14-point.

By: /s/ Daniel Ahrens
Daniel Ahrens
Assistant Solicitor General
Office of the New Mexico
Attorney General
408 Galisteo Street
Santa Fe, NM 87501
(505) 269-0686
dahrens@nmdoj.gov

*Counsel for Amicus Curiae the State of New Mexico*

## CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS

In accordance with the court's CM/ECF User's Manual, I hereby certify that all required privacy redactions have been made. In addition, I certify that the hard copies of this pleading that may be required to be submitted to the court are exact copies of the ECF filing, and the ECF submission has been scanned for viruses with Microsoft Defender Antivirus, and, according to the program, is free of viruses.

By: /s/ Daniel Ahrens
Daniel Ahrens

## CERTIFICATE OF SERVICE

On May 11, 2026, I filed the foregoing document through the Court's CM/ECF system, which caused all parties or counsel of record to be served by electronic means.

By: /s/ Daniel Ahrens
Daniel Ahrens